**Albert A. JONES, a minor child; Bridget Jones, a minor child, by their mother and next friend, Albertine Jones; Barbara L. Jones, Appellants,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellee.**

**Marcia SIMMS, a minor by her next friend, Sheila Simms, Appellant,**

v.

**Richard S. SCHWEIKER, Secretary, Department of Health and Human Services, Appellee.**

Nos. 81–1080, 81–1132.

United States Court of Appeals, Fourth Circuit.

Argued June 2, 1981.

Decided Dec. 30, 1981.

Rehearing and Rehearing En Banc Denied April 5, 1982.

Dennis W. Carroll, Baltimore, Md. (Eileen Franch, Administrative Law Center, Legal Aid Bureau, Inc., Baltimore, Md., on brief), for appellants.

Stanley Ericsson, Office of the Gen. Counsel, Dept. of Health and Human Services (Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Russell T. Baker, Jr., U. S. Atty., Randolph W. Gaines, Chief of Litigation, Baltimore, Md., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

The Social Security Act provides monthly benefits to minor children of deceased Social Security wage earners, if they qualify, under the statutory definition, as dependents.[1] Children whose parents were married to one another are automatically entitled to Surviving Child's benefits upon proof of paternity (or of maternity. The two cases here considered together concerned deceased wage-earning fathers.) Children whose parentage is not so formally established, however, must meet one or another additional test.

Two of the ways such sons and daughters can establish entitlement to the benefits are (a) by proving that their father was "contributing to [their] support" at the time of his death, 42 U.S.C. § 416(h)(3)(C)(ii), or (b) by establishing, "according to such law as would be applied in determining the devolution of intestate personal property by the Courts of the State in which [the wage earner] was domiciled at the time of his death," that they "would have the same status relative to taking intestate personal property as a [legitimate] child ...." 42 U.S.C. § 416(h)(2)(A). Those two ways are asserted by the claimants here. No contention is raised that, for purposes of § 416(h)(3)(C)(ii), the wage earners were living with the respective claimants.

The appellants are children who were denied surviving children's benefits under the Social Security Act after their respective fathers died.[2] The Secretary made, in each case, a finding, not disputed on appeal, that the insured individual was, indeed, the father of the child or children. The fathers and mothers never married one another. The father never, in either case, gave written acknowledgment of paternity. The questions presented, therefore, are restricted to whether dependency has been established in the case of each child in either of the two ways asserted.

The two families of surviving children each contend that the Secretary's decision that their respective fathers were not contributing to their support at death was not supported by substantial evidence. In the alternative, they contend that the intestate succession statutes of both West Virginia and Mississippi are unconstitutional[3] as applied to illegitimate children, that the respective state courts would be bound so to find, and further to find that, for reasons of equal protection, they were consequently entitled to inherit by intestate succession, and that, therefore, the Secretary erred in not awarding benefits under § 416(h)(2)(A).

I.

First we take up the Secretary's determination in each case that the children's fathers were not contributing to their support at death.

Appellant Marcia Simms was born on March 5, 1972. Her parents, Sheila Simms and Talmadge Meadows, met in November 1970. Unfortunately, six to eight weeks after Marcia was conceived, Meadows was killed while on active duty in the

---

1. 42 U.S.C. § 402(d) entitles every child to benefits, assuming the child meets certain requirements not at issue here, e.g. as to age and marital status, and, additionally, was dependent on a deceased wage earner at the time of his death. 42 U.S.C. § 402(d)(3) deems a child dependent unless the insured individual wage earner was not living with or contributing to the support of the child and the child is not the legitimate or adopted child of the wage earner. A child fitting the definition of 42 U.S.C. § 416(h)(2)(B) or § 416(h)(3) is deemed legitimate. "Additionally, any child who qualifies

under § 416(h)(2)(A) ... is considered legitimate ... and thus dependent.' Mathews v. Lucas, 427 U.S. 495, 499 n.2, 96 S.Ct. 2755, 2759 n.2, 49 L.Ed.2d 651 (1976).

2. Marcia Simms in one of the cases; Albert, Bridget and Barbara Jones in the other.

3. As the language of both the West Virginia and Mississippi statutes compels, the claimants acknowledge that the statutes would not, if constitutional as drawn, confer intestate taker status on any of them.

military.[4] Subsequently, on August 26, 1977, Marcia's mother applied for surviving child's benefits. Although the administrative law judge determined that Meadows fathered Marcia, he also concluded that Meadows was not contributing to Marcia's support within the meaning of § 416(h)(3)(C)(ii). The determination is supported by substantial evidence.[5]

■ Appellants Albert, Bridget and Barbara Jones are the children of Albertine Jones and Odes Watson. Although Watson was married to (but separated from) another woman, the Secretary specifically found that Watson was the father of the Jones children. Odes Watson died in Mississippi in 1975, and the children applied for benefits on August 26, 1976. Between 1959, when the first child was born, and 1972, when Watson suffered a disabling accident, the Secretary found that Watson's contributions to the children's support were sporadic and not in consideration of being regular support payments. Although we appreciate the strength of the testimony to the contrary, the Secretary's conclusion that Watson was not contributing to the support of the Jones children within the meaning of the Social Security Act is supported by sub-stantial evidence and so we affirm that conclusion.

## II.

We turn, therefore, to the contention that the Secretary erred as a matter of law when he refused benefits under 42 U.S.C. § 416(h)(2)(A).[6] Section 416(h)(2)(A) requires the Secretary to

apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State . . . in which [the wage earner] . . . was domiciled at the time of his death. . . .

The applicable domiciles, the domiciles of the decedents, are West Virginia (Meadows) and Mississippi (Watson). Each state has a statute which precludes illegitimate children from inheriting from their father, unless certain legitimating or regularizing action has been taken. According to appellants, each statute is unconstitutional because it denies equal protection and, therefore, since each child would, as a consequence of the constitutional defect, be eligible to inherit from his or her father, the Secretary erred by not applying the law acknowledging the force of the constitutional imperative, and granting benefits.[7]

---

4. Although Meadows died in Maryland, the Secretary determined that, at the time of his death, he was domiciled in West Virginia.

5. We recognize that the support issue is complicated in Marcia's case by the fact that Marcia was not born until seven months after Meadows' death. The proper test of "support" in such a case is "whether contributions are regular and substantial in relation to [1] the wage earner's income and [2] the [unborn] child's needs" at the time of the wage earner's death. [Arilla] Jones v. Harris, 629 F.2d 334, (4th Cir. 1980). See also Adams v. Weinberger, 521 F.2d 656, 660 (2d Cir. 1975). Here, the Secretary found that the $10–15 per month out of a $250 month salary that Meadows gave Sheila Simms for some months prior to conception was a gift to the mother, and was not made in anticipation of a possible pregnancy nor in light of the actual pregnancy. Thus, since the Secretary's finding that the contributions were not made with an eye to Meadows' responsibility to the unborn child is supported in the record, the second prong of the [Arilla] Jones test was not met.

6. Appellants couch their challenge in terms of the Social Security Act's being unconstitutional under the Fifth Amendment to the extent it incorporates unconstitutional state law. However, Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), undermines any contention that the social security statutory scheme for surviving children's benefits is unconstitutional under the Fifth Amendment. The argument, properly, should have been phrased in terms of whether the Secretary, in reading and applying West Virginia and Mississippi law, should have determined that tailoring of that law to satisfy constitutional failings amounted to an amendment, which he was bound to follow.

7. The argument principally derives from a dictum in Mathews v. Lucas, 427 U.S. 495, 515 n.18, 96 S.Ct. 2755, 2767 n.18, 49 L.Ed.2d 651 (1976) ("Appellees do not suggest, and we are unwilling to assume, that discrimination against children in appellees' class in state intestacy laws is constitutionally prohibited, see Labine v. Vincent, 401 U.S. 532 [91 S.Ct. 1017, 28 L.Ed.2d 288] (1971), in which case appellees would be made eligible for benefits under § 216(h)(2)(A).").

Whether the West Virginia and Mississippi statutes are unconstitutional and whether their deficiencies would, on equal protection grounds, compel the equation of appellants to legitimate children in their respective states, for purposes of intestate succession are tangled questions. Their resolution would require a delicate balancing act applied to several Supreme Court decisions, rendered by a badly divided Court, with results apparently depending on extremely slight factual differences:

> Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (5–4); Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978) (5–4); Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971) (5–4).

■ We have no occasion, however, to climb out on that high wire for we are compelled to conclude that, even assuming that the West Virginia and Mississippi acts are unconstitutional in the way that appellants contend, nevertheless appellants do not satisfy the dependency requirement under the Social Security Act.

We are not unaware that at least three lower courts have followed a route which, once there has been a decision that the intestate succession act is unconstitutional as applied to excluded children of unwed parents, leads to an award of benefits on the theory that 42 U.S.C. § 416(h)(2)(A) has been satisfied. Allen v. Califano, 456 F.Supp. 168 (D.Md.1978) (intestacy statutes of Maryland and Pennsylvania); Ramon v. Califano, 493 F.Supp. 158 (W.D.Tex.1980) (Texas act); White v. Harris, 504 F.Supp. 153 (C.D.Ill.1980) (Missouri).[8] It was entirely reasonable for the district courts so to have concluded in view of the dictum in Mathews v. Lucas, 427 U.S. 495, 515 n.18, 96

S.Ct. 2755, 2767 n.18, 49 L.Ed.2d 651 (1976) stating that eligibility would be established under § 416(h)(2)(A) if the state intestacy succession act were held to be discriminatory, and, therefore, unconstitutional.

ꞌ We find it inexplicable and inexcusable that the Government would not cite, even to attempt to distinguish, those three cases in its Brief. It is good luck, rather than management on the Government's part, that we have determined that the Supreme Court's dictum in Mathews v. Lucas does not, in fact, constitute the planks for the bridge's roadway which it, superficially, appears to do.

That is so because it must be taken into account that the question arises, in the instant case, not directly under a state intestate succession law, but rather under the Federal social security legislation. The Federal act has, in effect, incorporated each state statute by reference, pro tanto, in defining eligibility for benefits. Less than a year before Trimble v. Gordon was decided, on April 26, 1977, the Supreme Court on June 29, 1976 handed down Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). Membership in the Court did not change in the interval. Yet 6–3, the Court upheld treatment of a child born out of wedlock less favorably than those whose parents had regularized their relationships for purposes of determining whether they met the "dependency" requirements of the social security act. It was held to be proper, or at least not impermissibly discriminatory, to condition entitlement upon "dependency at the time of death." 427 U.S. at 507, 96 S.Ct. at 2763.

The justification was found to be administrative convenience, which took tangible form in "readily documented facts, such as

The recent decision in Fulton v. Harris, 658 F.2d 641 (8th Cir. 1981) simply assumes, without discussion, that unconstitutionality under the rationale of Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), would compel the result for which appellants argue. It involved a distinguishable set of circumstances in that the Arkansas court had tailored the intestacy statute of that state to allow inheritance by any intestate taker regardless of legitimacy or illegitimacy, applying the tailored

statute prospectively only. We have no comparable declaration by an agency of the state of the policy of Mississippi or of West Virginia.

In all events, the court, apparently not having been presented with the legal theory on which we have resolved the case, provided no authority, one way or the other, on what, to us, is the central and controlling issue.

**8.** See also Fulton v. Harris, supra (Arkansas).

legitimate birth, or existence of a support order or paternity decree, which could be relied upon to indicate the likelihood of continued actual dependency." *Id.* at 509, 96 S.Ct. at 2764. The Court opined:

> Congress was able to avoid the burden and expense of specific case-by-case determination in the large number of cases where dependency is objectively probable. Such presumptions in aid of administrative functions, though they may approximate, rather than precisely mirror, the results that case-by-case adjudication would show, are permissible under the Fifth Amendment, so long as ·that lack of precise equivalence does not exceed the bounds of substantiality tolerated by the applicable level of scrutiny.

*Id.* at 509, 96 S.Ct. at 2764.

Reflection therefore suggests:

1. Acceptable proofs of dependency such as inadvertently invalid marriage of the parents,[9] written acknowledgment by the parent,[10] support order,[11] paternity decree,[12] contribution to support,[13] and a common residence in the same household [14] have an *ante litem motam* aspect which cloaks them with an authenticity markedly greater than when circumstances arising only subsequent to the insured individual's death are advanced as reasons to qualify children of unwed parents for benefits.[15]

2. The social security act accepts many reasonable methods of proof of dependency directed to matters occurring in the lifetime of the parent. The whole thrust of the act is to confer the benefits of legitimacy on any child found to be dependent. *See* 42 U.S.C. § 402(d)(3).

3. Adoption of 42 U.S.C. § 416(h)(2)(A) served to extend the ways to establish dependency even to an event arising after the parent's death, the qualification as an intestate taker,[16] where the state law affirmatively showed that the legislature had concluded that there were factors making a dependency relationship probable, despite the absence of the regularizing aspects of marriage of the parents or other events linking the child to the parent. *See Mathews v. Lucas,* 427 U.S. at 514–15, 96 S.Ct. at 2766–2767:

> Similarly, we think, where state intestacy law provides that a child may take personal property from a father's estate, it may reasonably be thought that the child will more likely be dependent during the parent's life and at his death. For in its embodiment of the popular view within the jurisdiction of how a parent would have his property devolve among his children in the event of death, without specific directions, such legislation also reflects to some degree the popular conception within the jurisdiction of the felt parental obligation to such an "illegitimate" child in other circumstances, and thus something of the likelihood of actual parental support during, as well as after, life.

4. The West Virginia and Mississippi statutory language, each respectively incorporated by reference into the social security act, concededly made no value judgment that, in "the popular view within the jurisdiction," someone in the situation of Simms should be deemed a dependent of Meadows or persons occupying the position of the Joneses should be considered dependents of Watson. Indeed the exact contrary is true.

---

**9.** That constitutes sufficient proof of dependency for social security act purposes. 42 U.S.C. § 416(h)(2)(B).

**10.** Likewise, 42 U.S.C. § 416(h)(3)(C)(i)(I).

**11.** *See* 42 U.S.C. § 416(h)(3)(C)(i)(III).

**12.** *See* 42 U.S.C. § 416(h)(3)(C)(i)(II).

**13.** *See* 42 U.S.C. § 416(h)(3)(C)(ii).

**14.** *See* 42 U.S.C. § 416(h)(3)(C)(ii).

**15.** The large significance of the fact that the father, *during his lifetime,* had taken an unambiguous step to acknowledge paternity is demonstrated in *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974).

**16.** Post death in application, nevertheless, the insured individual is (somewhat artificially) presumed to have known during his life that the child would inherit and yet left things that way, signifying his satisfaction.

Should we knock out the statutes, in order to avoid the discrimination, it would be for federal constitutional reasons, and not affect the intent of the West Virginia and Mississippi legislatures as to what would constitute dependency or its equivalent.[17] Under the argument of appellants, incorporation by reference here would have to extend to adoption not of the state statutory language, but to an adoption of a partial *deletion* of such language.

5. The question, therefore, becomes whether "such law as would be applied" in § 416(h)(2)(A) means (a) all law, including that emanating from federal, constitutional, non-state sources, or (b) only law derived from state legislative enactments (or conceivably from the state's common law). It is obvious that only the latter was intended by Congress. The situation is akin to the commonly encountered question of whether "day" means a twenty-four hour period or only the time elapsed between sunup and nightfall. *Cf.* 42 U.S.C. § 416(h)(1)(A), where, with respect to establishing dependency for a spouse, the reference is first to "if the courts of the State . . . would find that such applicant and such insured individual were validly married." The alternative created for a case where the state court would not so find is "if such applicant would, under the laws applied by such courts, in determining the devolution of intestate personal property, have the same status . . . as a wife, husband, widow or widower. . . ."

The expression of an intended identity in scope of what a state court, applying state law, would find, and what law the state courts would apply seems apparent. Coupling that indication of meaning for the essentially same language elsewhere in the social security act with the congressional purpose to adopt "the popular conception within the jurisdiction," the conclusion is inescapable that § 416(h)(2)(A) does not purport to pick up involuntary modifications in the West Virginia and the Mississippi legislation, unintended by each of the state legislatures, but compelled by the federal constitution.

6. Alternatively, even if we were to hold that literal application of such West Virginia law "as would be applied in determining the devolution of intestate personal property" would lead to a determination that Simms was entitled to share in Meadows' intestate estate (and *pari passu* that the Joneses, under Mississippi law, were entitled to a share of the Watson intestate estate), the doing so would not in any way achieve the purposes which the incorporation by reference into the social security act of the West Virginia and Mississippi probate statutes was designed to serve. *Cessante ratione cessat ipsa lex. Cf. Boyter v. Commissioner of Internal Revenue*, 668 F.2d 1382 (4th Cir., 1981) where we refused to apply literally the language of a statute "because the transaction upon its face lies outside the plain intent of the statute." (Quoting with approval *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935)).

---

17. *Contrast Eskra v. Morton*, 524 F.2d 9 (7th Cir. 1975) (Stevens, J.). There the intendment of Congress was to achieve exactly the same treatment for an intestate taker from a Wisconsin Indian that an intestate taker would receive from a non-Indian under the Wisconsin statute. The situation, therefore, is compellingly different. Congress obviously desired and expected exactly the same result under two interrelated intestate succession schemes. Hence, the unconstitutionality which led to substitution of a meaning and effect *not intended* by the Wisconsin legislature was to be given force in order to maintain parity.

In the instant case, however, Congress intended to apply the West Virginia statute and the Mississippi statute to the extent that each

revealed an additional grounds for eligibility intended by the legislature. It was not the purpose of the adoption in the social security act of the provisions of the law which West Virginia courts or Mississippi courts would apply to abide by imperatives, federal and constitutional in nature, which would nullify and contradict the law the West Virginia legislature and the Mississippi legislature wanted to make applicable. To do so would confer eligibility beyond the point to which the two legislatures meant to go. The fact that, for equal protection reasons, the result for intestacy law purposes went further than the legislatures intended was not a reason to conclude that Congress meant to go further than the West Virginia and Mississippi legislatures wished to go.

7. Thus, we conclude that Simms and the Joneses do not qualify as dependents under § 416(h)(2)(A), even if they would qualify as takers in intestacy despite the West Virginia and Mississippi statutes to the contrary.

8. We are consequently spared another potentially thorny question. If Simms' position, for example, were sound, she would have established entitlement under the social security act on the basis of parentage alone. For her, and any other child claiming under a West Virginia decedent and presumably under Illinois (*Trimble*), Maryland (*Allen*), Missouri (*White*), Pennsylvania (*Allen*) and Texas (*Ramon*) decedents as well, parentage alone would make them intestate takers. The need to prove dependency would evaporate. What constitutional basis would then exist for continuing the dependency requirement for cases involving deceased wage earners domiciled in the other 44 States, the District of Columbia, etc.? Might not the equal protection component of the Fifth Amendment be violated?

*Ensminger v. C.I.R.*, 610 F.2d 189, 191 (4th Cir. 1979) suggests that variance in treatment, based on differences in the laws of the several states is constitutionally permissible because of "the deference Congress has demonstrated for state laws" and sensitivity to such "intimate and personal relationships as the state in which they reside treats them." But that assumes valid state laws. It is of doubtful constitutionality to permit variances in application of nationwide social security laws favoring intestate takers of decedents domiciled in states solely because those states failed to pass constitutional laws. Care in draftsmanship should not permit exclusion from benefits of some children whose parent died in New York, its intestacy laws passing muster under *Lalli*, while those very benefits are permitted for the child of a West Virginia decedent, otherwise in identically the same position as the New York counterpart. That would create a reward for a bad statute.

We do not have to decide that issue. Nevertheless, avoidance of its amounts to another reason reinforcing the correctness of our decision that, as a matter of statutory interpretation, § 416(h)(2)(A) has not established dependency for Marcia Simms or for the Joneses.

THE JUDGMENTS ARE AFFIRMED.

ALBERT V. BRYAN, Senior Circuit Judge, dissenting:

The issue in these appeals is whether the "dependency" requirement of § 202(d) of the Social Security Act, 42 U.S.C. § 402(d) (1976), has been met by the several claimants who are parties to these two actions. Regrettably, the majority misconstrues the requirements imposed by the Act and, in doing so, denies benefits to four minor children, all of whom are conceded to be the natural, albeit illegitimate, children of Odes Watson or Talmadge Meadows, both covered wage earners. What the Court fails to recognize is that "visiting this condemnation on the head of an infant is illogical and unjust." *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768 (1972). Finding this result unsupported in law and unconscionable in fact, I dissent.

I

Title II of the Social Security Act of 1935, as amended, (Act) 42 U.S.C. § 401 *et seq.* (1976), authorizes the payment of benefits to covered wage earners, or their dependents, on account of the death, disability, or old age of the insured individual. A brief survey of the statutory provisions quickly reveals, however, that "dependency," as used in the Act, is a term of art. One may be a "dependent" only if one is the spouse,[1] parent,[2] or child[3] of the insured individual. Others, while they actually may have been dependent in a real economic sense, nonetheless do not qualify for benefits.

---

1. 42 U.S.C. §§ 402(b), 402(c), 402(e), 402(f) (1976).

2. *Id.* §§ 402(g), 402(h).

3. *Id.* § 402(d).

Moreover, the class of children who are deemed "dependent" upon the insured individual is not necessarily identical to those who actually are dependent. Instead, for reasons of administrative convenience, Congress has established a series of alternative tests, satisfaction of any one of which automatically results in a finding of dependency. What the majority overlooks, however, is that six of these seven tests, including § 216(h)(2)(A), the key provision in issue here, do not contain *any* requirement that the applicant-child actually have been supported by the deceased parent.

This point, while basic, is crucial to an understanding of the Court's error today. Instead of determining squarely whether the appellants qualify under § 216(h)(2)(A), the Court mistakenly implies that an actual showing of dependency is necessary to qualify for survivors' benefits under this provision. *See* Opinion of the Court, *supra*, at 757–758, 760–761, 761–762. Section 216 (h)(2)(A), however, like all but one other test conceived by Congress for measuring "dependency" requires no such showing on its face, and to my knowledge, has never before been so construed by any court.

In pertinent part, this provision states:

In determining whether an applicant is the child ... of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual ... was domiciled

at the time of his death.... Applicants who according to such law would have the same status relative to taking intestate personal property as a child shall be deemed such.

42 U.S.C. § 416(h)(2)(A) (1976). Although its legislative history is sparse, it appears that Congress concluded that this provision, requiring reference to State laws of intestate succession, was the most advisable method by which the Secretary could determine who was a child. Since family status and the legal effect of family relationships traditionally have been the province of the States, it follows that deference to State rules of decision would be more sensible than an effort to develop a uniform Federal rule.

At the same time, it must be understood that our role in interpreting the State laws incorporated into the Act is a distinctly Federal one. While the rule of decision originates in the States, and while we are bound by their interpretations of who can and cannot inherit in intestacy,[4] we nevertheless sit as a Federal court reviewing the actions of the Secretary of Health and Human Services, a Federal official, and therefore render a Federal decision.[5] Our constructions of the State laws, accordingly, have no effect on whether a child actually is entitled to inherit his father's intestate personal property. Rather, our mission is to determine, solely for purposes of the Social Security Act, whether a State court would decide if these plaintiffs would be entitled to share in the inheritance of their fathers' intestate personalty.

4. It should be noted, however, that where, as here, State law is incorporated so as to supply a Federal rule of decision, Federal courts are bound by the State rule, or the State interpretation, only "so long as it is plain ... that the State rules do not effect a discrimination against the Government, or patently run counter to the terms of the Federal legislation." *Reconstruction Finance Corp. v. Beaver County*, 328 U.S. 204, 210, 66 S.Ct. 992, 995, 90 L.Ed. 1172 (1946). As discussed in Part III, *infra*, I believe that the Court's holding foreclosing consideration of the constitutionality of the State statutes is inimical to the plain Federal policy embodied in the Act.

5. In *Kasey v. Richardson*, 462 F.2d 757 (4th Cir. 1972), we made this point convincingly when we noted that the Secretary is not bound, strictly speaking, by a State court decision expressly holding that an illegitimate child was entitled to inherit property from her putative father. *Id.* at 761. It is the Secretary's duty under § 216(h)(2)(A) to compile a record and make an independent determination of the substance of the State law as it would be construed in the State courts. Still, the Secretary cannot ignore compelling evidence which formed the basis of the State decision, at least provided that such evidence properly was before the Secretary, and otherwise was uncontradicted.

In this context, finally, the Court today seems to overlook that not only we, as a Federal Court, but also the courts of Mississippi and West Virginia are bound by the Supremacy Clause, *see* U.S.Const. art. 6, which requires the Constitution to take precedence over all laws, Federal and State. Thus a State court, construing its intestate succession statute, must consider whether its law violated the Equal Protection Clause of the Fourteenth Amendment and if it finds its law to be repugnant to the Constitution, then it may not let it remain as an obstacle to the children's inheritance. In short, if the State court must determine that its law is unconstitutional, it must permit the illegitimate children to inherit in the same way as legitimate children.[6]

## II

Approaching the instant controversy in this light, I am convinced that the laws of Mississippi[7] and West Virginia[8] in issue in this proceeding are unconstitutional and that the courts of those States would so hold. Such a holding establishes that the children, in fact, are entitled to inherit under State law and *a fortiori*, that the Secretary erred in denying them benefits they are thus entitled to receive under § 202(d).

In *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the Supreme Court invalidated an Illinois statute which permitted an illegitimate child to share in the inheritance of his mother's intestate estate, but restricted inheritance from the father to cases in which the father subsequently married the mother and acknowledged the child as his own. Legitimate children, by contrast, were entitled to inherit from both parents without limitation.

Although the Court refrained from holding that legitimacy is a suspect classification, it did indicate that the scrutiny of a State's interest in, and purpose for, the classification "is not a toothless one." *Id.* at 767, 97 S.Ct. at 1463, *quoting Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1970). On the authority of *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), the Court rejected the proffered interest in promoting licit family relationships, noting that disadvantages heaped upon the innocent offspring of an illicit coupling bore little, if any, relationship to the asserted State interest. In addition, the Court was unpersuaded by other arguments advanced by the State, including its generally legitimate interest in providing for an orderly disposition of property at death. The defect in the Illinois scheme, observed Justice Powell, was that it failed to distinguish between categories of illegitimate

---

**6.** This is not to say, of course, that the State may not then amend its law to make it consistent with the Constitution. Moreover, in doing so, the State effectively may deny some children the right to inherit if they cannot meet the new, constitutional burden imposed on them by the legislature. As long as the statute is unconstitutional, however, the State courts, and we because of incorporation, have no choice but to permit inheritance, or in the Social Security context, to order the award of benefits. *See Mathews v. Lucas*, 427 U.S. 495, 515 n.18, 96 S.Ct. 2755, 2767 n.18, 49 L.Ed.2d 651 (1976); *Fulton v. Harris*, 658 F.2d 641 (8th Cir. 1981); *White v. Harris*, 504 F.Supp. 153 (C.D.Ill.1980); *Ramon v. Califano*, 493 F.Supp. 158 (W.D.Tex. 1980); *Allen v. Califano*, 456 F.Supp. 168 (D.Md.1978).

**7.** The Mississippi statutes provided as follows:

If any man beget a child or children by a woman whom he shall afterward marry, such child or children, if acknowledged by the

man, shall, in virtue of such marriage and acknowledgment, be legitimate and capable in law to inherit and transmit inheritance as if born in wedlock.

Miss.Code Ann. § 91-1-15.

The court, on the date of the entering of such order of paternity, if the father of the child is unmarried and could lawfully have consummated a marriage with the mother of the child under the laws of this state, may adjudicate in such order that the child shall inherit from the father as could a natural child of the father under the statutes of descent and distribution.

*Id.* § 93-9-29(5).

**8.** The West Virginia statute states:

If a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, shall be deemed legitimate.

W.Va.Code § 42-1-6.

children. In broadly denying illegitimates the right to inherit from their fathers, the statute was found to extend far beyond a permissible purpose. Finally, the Court also rejected the related claims that the decedent could have avoided this problem by leaving a will and that in the absence of a will, the presumed intent of the decedent was to leave his property in accordance with the statutory scheme.[9] Thus finding no justification for the discrimination between legitimate and illegitimate children, the statute was held violative of the Equal Protection Clause.

One year later, the Court upheld a New York statute which did not treat legitimate and illegitimate children identically. *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). The statute in *Lalli* provided that a bastard could inherit from his father if a court of competent jurisdiction, acting during the lifetime of the father, had entered an order of filiation. As a further limitation, the statute required the proceeding to be instituted either during the mother's pregnancy or within two years of the child's birth. *Id.* at 262, 99 S.Ct. at 521. Because the State has a legitimate and substantial interest in the orderly disposition of its residents' property, and because special problems of proof arise in establishing paternity, particularly after the father's death, the Court concluded that the New York statute was an appropriate constitutional vehicle for satisfying the State's interests.

Despite the protestations of four dissenting Justices, *see id.* at 277, 99 S.Ct. at 529 (Brennan, J., dissenting), the Court found New York's statute distinguishable from the one in issue in *Trimble*. Rather than

erecting an absolute bar to inheritance the Court noted that New York had followed a more flexible course, thus permitting many illegitimate children to escape the absolute bar. In addition, the Court observed that the New York statute was related directly to the primary goal of providing for an orderly disposition of property, and that the statutory standard dealt only with the practical problems of proof. Finally, the Court noted that the marital status of the parents was irrelevant. *Id.* at 267, 99 S.Ct. at 524.

Reading both *Trimble* and *Lalli* together, it is clear that the States do have sufficient grounds to warrant imposing somewhat higher burdens on illegitimate children. These interests, however, have bounds. While a State may require particularized proof of paternity in order to prevent spurious claims to the estate of a male decedent, it may not erect an absolute bar. Nor may it follow a course in which the child—who all recognize has done no wrong—is powerless to act in furtherance of his interests in establishing paternity.

I therefore believe that the statutes now before us share the defects described by the Court in *Trimble* and that if asked today, the courts in both West Virginia and Mississippi, would be obliged to find them unconstitutional. Mississippi's statute[10] permits illegitimate children to inherit from their father in two instances. Either the parents can subsequently marry and the father can acknowledge the child as his own, Miss.Code Ann. § 91–1–15, or a court may issue a decree of paternity and further order that the child be entitled to inherit from his father. This latter option may be exer-

**9.** That the decedent could have left a will was of no constitutional significance, said the Court. Such a course of action by the decedent would eliminate the reason for the challenge to the statute, but the existence of such an alternative is of no use in demonstrating the constitutionality of the *intestate* succession scheme. 430 U.S. at 773–74, 97 S.Ct. at 1466–1467. The argument as to the presumed intent of the decedent was rejected on the ground that this asserted purpose, in fact, was not a purpose of the Illinois legislature. *Id.* at 775–76, 97 S.Ct. at 1467–1468.

**10.** Since this litigation began, Mississippi amended its statute in a way which arguably permits the Jones children to qualify as intestate heirs. Because of this amendment, which appears to be retroactive, I would remand No. 81–1080 for reconsideration by the Secretary. The majority, however, limits their discussion to the old statute and to the extent this statute is found to be the basis for denying the children benefits, I would hold it unconstitutional.

cised, however, only if the father is unmarried and if the parents have the capacity to marry under Mississippi law. *Id.* §§ 93–9–9, 93–9–29(5). In accordance with West Virginia law, an illegitimate child may inherit only if his parents intermarry.

No discussion of Mississippi's first alternative is necessary. In its material terms, it is identical to the statute struck down in *Trimble* and thus is plainly unconstitutional. Mississippi's second alternative, and West Virginia's provision, also must fall. Neither statute provides a reasonable ground upon which an illegitimate child may base a claim to a share of his father's intestate estate. Instead, a barrier is erected which may be surmounted only by the parents having the capacity to marry and/or subsequent inter-marriage—events over which the child has no control. Moreover, in erecting this bar, it is evident that the State's interest in enforcing its statute is more attuned to the desire to deter illicit activity by the parents—which is pursued illogically by visiting their sins upon the innocent child—than to a legitimate, substantial interest in providing for the orderly disposition of its decedents' property as was intended under the New York statute. Finding no proper State interest served by these legislative provisions, the conclusion that they are unconstitutional is compelled.

### III

In view of the instant majority's assertions that a consideration of the unconstitutionality of the State law is inconsistent with Congress' design in enacting § 216(h)(2)(A), I feel constrained to point out that "the primary purpose of the contested Social Security scheme is to provide support for dependents of a [dead or] disabled wage earner." *Jiminez v. Weinberger,* 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363 (1974). Congress utilized this scheme requiring reference to State law simply because it believed that it would be an effective, facile way of determining who was "dependent" and thus entitled to benefits. There has never been a desire evinced by Congress to erect barriers blocking children from receipt of benefits on account of their parents' death or disability. Indeed, in the 1965 Social Security amendments, Congress explicitly chose to add additional provisions, apart from § 216(h)(2)(A), in order to make certain that the class of children likely to be dependents was as broad as necessary to encompass all legitimate claims.[11]

Thus it is evident that the majority's decision today actually frustrates the congressional purpose.[12] Rather than continuing to penalize the children for their parents' actions, I would hold the State statutes, as incorporated into Federal law, unconstitutional and direct the Secretary to honor their claims.

11. *See* S.Rep.No.404, 89th Cong., 1st Sess. 106–07, *reprinted* in [1965] U.S.Code Cong. & Ad.News 1943, 2049–50.

12. This course is all the more regrettable in light of the Supreme Court's recent comments in *Ridgway v. Ridgway,* —— U.S. ——, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981). The Court, acknowledging that Federal law plays a limited role in domestic relations, said nevertheless that "this Court, even in that area, has not hesitated to protect, under the Supremacy Clause, rights and expectancies established by federal law against the operation of state law, or to prevent the frustration and erosion of the congressional policy embodied in the federal rights." *Id.* at ——, 102 S.Ct. at 54. By the same token, these patently unconstitutional State intestate succession schemes ought not to be used to subvert Congress' expressed policy to accord benefits to the Jones children and Marcia Simms.