Evelyn M. PARSONS, for Charles I. BRYANT, Jr., infant, Appellant,

v.

HEALTH AND HUMAN SERVICES, Appellee.

No. 84–1842.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1985.

Decided May 21, 1985.

J.D. Bolt, Grundy, Va., for appellant.

Charlotte Hardnett, Dept. of Health and Human Services, Washington, D.C. (Beverly Dennis, III, Regional Atty., David L. Hyman, Asst. Regional Atty., Philadelphia, Pa., John P. Alderman, U.S. Atty., Jennie L. Montgomery, First Asst. U.S. Atty., Roanoke, Va., on brief), for appellee.

Before WIDENER and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Evelyn M. Parsons, suing on behalf of her infant son, Charles I. Bryant, Jr., appeals a summary judgment affirming the Secretary's denial of his Social Security benefits. The child's father was an insured, deceased wage earner. Parsons raises two issues: first, the North Carolina Succession Law, as applied to an illegitimate, posthumous child is unconstitutional, and, consequently, her child is entitled to benefits under 42 U.S.C. § 416(h)(2)(A). Second, at the time of his death, the father was contributing to his son's support, entitling him to benefits under 42 U.S.C. § 416(h)(3)(C)(ii). The district court affirmed the denial of benefits, holding that the Secretary's decision was supported by substantial evidence. We reverse because the district court and the administrative law judge misapplied the legal standards for ascertaining the adequacy of contributions to an illegitimate, posthumous child.

## I

Evelyn Parsons and Charles Bryant began dating in 1980. From June 1981 until Bryant's death in March 1982 they lived together on long weekends—from Friday to Sunday or Monday—in a house belonging to Bryant's cousin in Galax, Virginia. Bryant contributed to the expenses of the house, and he and Parsons shared their other expenses during the weekends. When they were not together in Galax, Parsons lived with her mother in Independence, Virginia, where she worked. Bryant lived with his stepfather and worked in Ennice, North Carolina. From time to time he visited Parsons in Independence.

Parsons became pregnant in October 1981. She and Bryant continued their living arrangement in Galax. Bryant publicly acknowledged that the child was his and told his family that he intended to take care of it. He and Parsons discussed getting married, but they wanted to become more financially secure before marriage. Bryant gave Parsons money on several occasions, amounting to approximately $50, to pay for her transportation to the doctor. After an initial payment, insurance covered the doctor's bills. Parsons had no other expenses pertaining to the child until after Bryant's death.

Bryant was killed in an automobile accident on March 22, 1982. A young woman who was a passenger in his car was also killed. Although the administrative law judge noted that Bryant was with another woman, the record does not disclose that he intended to alter his relationship with Parsons or his intention to provide for his child in the future. In fact, Bryant and Parsons had lived together in Galax, as was their custom, during the weekend preceding his death.

After the birth of Charles I. Bryant, Jr., Parsons sought child support benefits based on Bryant's insured status. The administrative law judge found, on the basis of ample evidence, that Bryant was the father of the boy. Nevertheless, he ruled that Bryant's son was not entitled to benefits because the child did not meet the requirements of the Act pertaining to an illegitimate child. Only two of the several ways an illegitimate child can obtain benefits are pertinent to this case. With respect to these, the administrative law judge ruled that the child could not inherit personal property under North Carolina law as the son of Bryant. He also held that Bryant "did not contribute any significant amounts of support toward the needs of Charles I. Bryant, Jr., or of Evelyn Parsons, and was not making any significant contribution at the time of his death." Holding that these findings were supported by substantial evidence, the district court granted summary judgment for the Secretary.

## II

■ We recently explained the statutory provisions for determining an illegitimate child's entitlement to benefits in *McMillian v. Heckler*, 759 F.2d 1147 (4th Cir.1985),

and that analysis need not be repeated here. It is sufficient to note that pursuant to 42 U.S.C. § 416(h)(2)(A) an illegitimate child can recover benefits if the child would inherit from the deceased parent under the intestate laws of the state in which the parent was domiciled at the time of his death.

■ North Carolina law provides that an illegitimate child may inherit from his father if paternity is established by a judgment entered before the father's death or by a written, notarized acknowledgment executed during the lifetime of both the father and the child. N.C.Gen.Stat. §§ 29–19 and 49–14 (1984). Parsons contends that the barrier imposed by the statute on a posthumous child violates the equal protection clause. She relies on *Handley v. Schweiker*, 697 F.2d 999 (11th Cir.1983), which awarded an illegitimate child Social Security benefits because a similar Alabama statute was unconstitutional.

There can be little doubt that if this case had arisen in the neighboring Eleventh Circuit, Charles I. Bryant, Jr. could recover Social Security benefits under 42 U.S.C. § 416(h)(2)(A) as a child entitled to intestate distribution from his deceased father's estate. Nevertheless, as the Secretary points out, recovery of benefits in the Fourth Circuit is barred by *Jones v. Schweiker*, 668 F.2d 755 (4th Cir.1981), *vacated sub nom. Jones v. Heckler*, 460 U.S. 1077, 103 S.Ct. 1763, 76 L.Ed.2d 339 (1983).* *Jones*, in contrast to *Handley*, holds that even if a state intestacy statute is unconstitutional, the illegitimate child is not entitled to benefits.

### III

Section 416(h)(3)(C)(ii) qualifies an illegitimate child for benefits if an insured decedent "is shown by evidence satisfactory to the Secretary to have been the ... father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died." The Supreme Court held this provision to be constitutional in *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). In reaching this conclusion, the Court admonished that condemning the child for the liaison of his parents " 'is illogical and unjust,' " and the imposition of disabilities on an illegitimate child is 'contrary to the basic concept of our system....' " 427 U.S. at 505, 96 S.Ct. at 2762. Furthermore, the Court observed that the statute was designed to provide "for all children of deceased insureds who can demonstrate their 'need' in terms of dependency at the time of the insured's death." As shown by legislative history, the statute "was intended just 'to replace the support lost by a child when his father ... dies....' " 427 U.S. at 507, 96 S.Ct. at 2763. Our interpretation of § 416(h)(3)(C)(ii) must be guided by these precepts.

The child satisfies two of the statutory requirements. Bryant was insured, and the administrative law judge found him to be the child's father. Consequently, the role § 416(h)(3)(C)(ii) plays in screening spurious paternity claims need not detain us. *See Jiminez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); *Adams v. Weinberger*, 521 F.2d 656, 659 (2d Cir.1975). Only the adequacy of Bryant's contributions remains an issue. As *Mathews v. Lucas* explains, the assessment of the father's contributions must be made by considering the child's needs in terms of dependency at the time of the father's death.

---

* On remand, the court ordered that benefits be awarded to one of the children in the suit, Marcia Simms, because of a change in West Virginia law that would allow her to take under the intestate laws of that state, thus qualifying her for benefits under 42 U.S.C. § 416(h)(2)(A). The court held the companion case of the Jones children in abeyance pending receipt of an answer to a question about Mississippi intestacy law that it certified to the Supreme Court of Mississippi. *Jones v. Heckler*, 712 F.2d 924 (4th Cir.1983). The Mississippi legislature subsequently changed its intestacy laws to treat legitimate and illegitimate children equally, and the court ordered benefits to be paid to the Jones children. *Jones v. Heckler*, [754] F.2d [519] (Feb. 4, 1985).

■ The flaw in the administrative law judge's opinion is the standard he applied to determine the adequacy of Bryant's contribution to the support of the child. Section 416(h)(3)(C)(ii) does not expressly require significant contributions, and it does not require contributions to the child's mother in order to establish the child's entitlement to benefits. The administrative law judge cites no authority for the gloss he has placed on the statute.

■ The regulations promulgated by the Secretary state:

Contributions must be made regularly and must be large enough to meet an important part of your ordinary living costs. Ordinary living costs are the costs for your food, shelter, routine medical care, and similar necessities. If the insured person only provides gifts or donations once in a while for special purposes, they will not be considered contributions for your support....

20 C.F.R. § 404.366(a)(2). The regulations can be applied readily to test the adequacy of the support afforded living children. They are, however, "only marginally helpful" to measure support for a posthumous child. *See Adams v. Weinberger,* 521 F.2d 656, 659 (2d Cir.1975). Recognizing the difficulty of applying the regulations literally, the Second Circuit said:

An unborn child is totally dependent upon its mother for its human needs. Thus, a legal requirement that the father's support of the unborn child must be "regular" and "continuous" is purposeless. Support for an unborn child cannot be measured on that basis. Such a test would prevent almost all posthumous children from qualifying under 42 U.S.C. Sec. 416(h)(3)(C)(ii), a result clearly not warranted, given the purposes of the insurance provisions of the SSA. Applying the "regular" and "continuous" test to the measure of support given [the mother] is improper since the dependency of the mother is not at issue.

In determining whether or not the insured, wage earning father was contributing to the support of the illegitimate, posthumous child applicant at the time of the father's death, a more relevant test is called for. We must ask *whether the support by the father for the unborn child was commensurate with the needs of the unborn child at the time of the father's death.* If it was, then the statutory requirements have been met. (emphasis added)

521 F.2d at 660. We approve of the Second Circuit's standard. It conforms to the text of § 416(h)(3)(C)(ii). It reflects the design and purpose of the Act by recognizing the needs of the child in terms of dependency as explained a year later in *Mathews v. Lucas.* It is not in conflict with our precedent. Referring to a living father and a living child in *Jones v. Harris,* 629 F.2d 334, 336 (4th Cir.1980), we said the proper test was whether contributions were regular and substantial in relation to the wage earner's income and the child's needs.

■ At the time of Bryant's death, Parsons was only five months pregnant. With a minor exception, her medical needs, and vicariously the child's, were covered by insurance. Bryant earned a gross income of $8,000, and he had stated that he would attend to the child's future needs. In the meantime, he was furnishing money from time to time to pay Parsons's transportation to the doctor's office for prenatal care. Although $50 would not support a living child, the evidence conclusively establishes that it sufficed for all of the needs of the child Parsons was carrying. In short, in compliance with the statute, Bryant was "contributing to the support of the [unborn] applicant at the time [he] died." The evidence discloses that the unborn child had no need for larger contributions at the time of Bryant's death.

The judgment of the district court is reversed, and this case is remanded with direction to remand it to the Secretary for the payment of benefits to Charles I. Bryant, Jr.