**Christi HAAS, as parent and natural guardian of Scott M. Glenn, II, Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellee.**

No. 95–1918.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 27, 1995.

Decided March 6, 1996.

Order Granting Rehearing En Banc and Vacating Decision May 15, 1996.

Ivan A. Lebamoff, Thomas P. Boyer, Ann M. Trzynka (argued), Fort Wayne, IN, for Plaintiff–Appellant.

Robert N. Trgovich, Office of the United States Attorney, Fort Wayne, IN, Michael C. Messer (argued), Department of Health and Human Services, Region V, Office of the General Counsel, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and BAUER and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

A dependent child of a wage earner is entitled to "child's insurance benefits" under the Social Security Act if the wage earner is insured under the Act and dies, becomes disabled, or reaches the age of 65. 42 U.S.C. § 402(d). Problems of determining entitlement sometimes arise when the wage earner dies and was not married to the child's mother. The Act contains an exhaustive list of methods of establishing entitlement to child insurance benefits in such a case: proof that the wage earner would have been married to the child's mother but for a technical deficiency in the marriage; a written acknowledgment of paternity by the wage earner; a judicial decree that the wage earner was the child's father, provided the decree was issued before the wage earner died; a court order that the wage earner contribute to the support of the child because the wage earner was the child's parent; a determination by the Social Security Administration that the wage earner was the parent of the child and was living with or contributing to the support of the child when the wage earner died; or proof that the child was entitled to inherit from the wage earner under the law of intestate succession of the wage earner's state of domicile. 42 U.S.C. §§ 416(h)(1)(B), (2), (3). Only the last-mentioned of these methods (§ 416(h)(2)(A)) was available to Scott M. Glenn, II, the applicant in our case, born November 6, 1992, eight months after the death in an automobile accident of Scott M. Glenn, the wage earner. The child's mother, Christi Haas, had not been married to the wage earner or living with him; no paternity decree or support order had been issued; and he had provided no support directly or indirectly to the unborn child.

One month after Scott's birth, his mother filed a petition in an Indiana state court to establish the wage earner's paternity. The wage earner's mother, who was the personal representative of his estate, testified in support of paternity, and the court entered a declaration that the wage earner was indeed the child's father. The estate later filed a suit for wrongful death based on the accident in which the wage earner had been killed. The court in which that suit was filed determined that the child, as the only dependent next of kin of a decedent who had left no widow, was entitled to the proceeds of the suit (which was eventually settled). Ind. Code § 34–1–1–2.

The administrative law judge acknowledged that there was satisfactory evidence of the wage earner's paternity but nevertheless denied the application for benefits. Young Glenn's eligibility for benefits depended on his eligibility to inherit under Indiana's intestate succession law, and Ind.Code § 29–1–2–7(b) provides that, "for inheritance," a child born out of wedlock will be treated as if his parents were married only if

(1) The paternity of the child has been established by law in a cause of action that is filed:

(A) During the father's lifetime; or

(B) *Within five (5) months after the father's death;* or

(2) The putative father marries the mother of the child and acknowledges the child to be his own. [Emphasis added]

The suit to establish the wage earner's paternity "for inheritance" had been brought one month after the child's birth and therefore nine months after the wage earner's death: too late.

■ The appellant argues that the five-month statutory deadline is merely a statute of limitations and hence is waived by not being pleaded. It was not pleaded in the paternity suit. In fact that suit was uncontested. The most common type of paternity suit is one brought against a man who denies paternity, or at least doesn't want the financial burdens of fatherhood. Here the man was dead, and apparently left no assets other than a claim for wrongful death. Since the personal representative of his estate believed

herself to be the child's grandmother, and since unless she herself had been dependent on the decedent, of which there is no hint in the record, she would have had no personal stake in the wrongful-death action, she had no financial incentive to resist the paternity suit and she did not resist it. She had nothing to lose and money for the child whom she believed to be her grandson to gain.

Although the facts are unusual and doubts about the wage earner's paternity slight, the danger of collusive paternity suits is not slight. Whenever the putative father dies, a child or children can sue to establish paternity, knowing that the father's estate, if it has no assets or at least no assets other than what a child might claim, may not bother to contest the suit. In such a case a spurious allegation of paternity might provide the basis for awards of child insurance benefits, for certain life insurance or employee death benefits, for the inheritance of an intestate estate that might otherwise escheat to the state because the decedent had no known relatives, or for the proceeds of a legal judgment. The first and last incentives for a collusive paternity suit were present here and the suit was not contested, although, as we said, the probability seems slight that the allegation of paternity was spurious. We do not know, of course. We have pointed out that the grandmother had no stake in the wrongful-death suit and therefore no reason to resist the claim of paternity; nor did anyone else. But we do not rest our decision on any doubts that Glenn senior is the claimant's father.

Whether Indiana's five-month statute of limitations was motivated by a concern with preventing collusive paternity suits, or whether, as suggested in *S.V. v. Estate of Bellamy*, 579 N.E.2d 144, 148 (Ind.App.1991), the only concern was with the prompt winding up of estates (for remember that the five-month limitation is applicable only when the purpose of the paternity suit is to establish a right of inheritance), the policy behind the deadline would be impaired were the deadline deemed waived simply by not being pleaded. This makes it unlikely that the Indiana legislature intended the deadline to be an ordinary statute of limitations, which

like other affirmative defenses is waived if the defendant fails to plead it. Its location in the statute is another clue that it is an element of the plaintiff's claim rather than an affirmative defense. *Bocek v. Inter–Insurance Exchange,* 175 Ind.App. 69, 369 N.E.2d 1093, 1097 (1977); *General Motors Corp. v. Arnett,* 418 N.E.2d 546, 548 (Ind.App.1981). The distinction between the two types of limitation is a familiar one in the law, *Boggs v. Adams,* 45 F.3d 1056, 1060 and n. 8 (7th Cir.1995), though it has been criticized as archaic. *Tregenza v. Great American Communications Co.,* 12 F.3d 717, 719 (7th Cir. 1993).

It is true that Indiana courts have sometimes construed deadlines for bringing paternity suits as mere statutes of limitations. *In re Paternity of T.C.S.,* 576 N.E.2d 633 (Ind. App.1991); *D.E.F. v. E.M.,* 173 Ind.App. 274, 363 N.E.2d 1030, 1032 (1977). But these were not cases in which the objective of the suit was to establish entitlement to inherit. Such a suit is governed by the five-month limitation, which if waivable would expose the settlement of decedents' estates to debilitating uncertainty. A new heir might appear, claiming a share of the estate, after the assets of the estate had been distributed to the known heirs, and the defendant in the paternity suit might fail, deliberately or inadvertently, to plead the statute of limitations. That is not an issue here, but we are considering whether the deadline would be waivable in suits brought under the Indiana statute, that is, suits to establish paternity for the purpose of inheritance. *Bocek* holds that time limits on the bringing of suits based on statutory rights are elements of the claim, and neither *T.C.S.* nor *D.E.F.* alludes to this principle; maybe it was not argued in those cases. *Bocek* does not stand alone. Two other Indiana cases hold that the identical five-month deadline for bringing suit against a decedent's estate is an element of the claim and not merely a statute of limitations. *McEwen v. McEwen,* 529 N.E.2d 355, 358–59 (Ind.App.1988); *Rising Sun State Bank v. Fessler,* 400 N.E.2d 1164, 1166 (Ind.App. 1980). The statutory language at issue in those cases was more emphatic than the statutory language at issue here—it was that suits not brought within five months "shall be forever barred." Ind.Code § 29–1–14–1(a). But given the identity of the deadlines and the fact that both statutes are concerned with inheritance (and so presumably reflect the same desire for a swift resolution of decedents' estates), we would be surprised to find the deadline treated as an element of the claim in one and as a mere statute of limitations in the other. An argument could be made that the deadline should be tolled until the child was born, but Haas does not make the argument, perhaps because it was considered and rejected in *S.V. v. Estate of Bellamy, supra,* 579 N.E.2d at 145.

We add for completeness that even if the five-month deadline is waivable, the Social Security Administration might not be bound by a determination of paternity made in an uncontested proceeding. *George v. Sullivan,* 909 F.2d 857 (6th Cir.1990); *Gray v. Richardson,* 474 F.2d 1370, 1373 (6th Cir.1973). But the Social Security Administration did not base its denial of benefits on the lack of contest, so neither may we. We are convinced that the five-month deadline is nonwaivable.

■ This short, unwaivable deadline is a crude device for discouraging fraudulent or collusive paternity claims designed to establish a right of inheritance; but it is not completely arbitrary. When the unmarried father of a child dies, and there has been no determination of paternity, almost the mother's first concern will be the establishment of paternity and she can be expected therefore to move immediately. If she does not, this may be an indication that she does not believe, or at least lacks confidence, that the "father" really is her child's father. Granted, it is a weak indication. It might not occur even to a person relatively knowledgeable about law that a paternity suit could be, let alone that it must be, brought *before* the birth of the child whose paternity was to be determined. Given this point and the high probability that the wage earner in this case really is the child's father, the application of the statute produces a harsh result and thus sets the stage for the appellant's challenge to the statute's constitutionality, or more precisely to the constitutionality of the statute's incorporation into the Social Security Act.

The two issues are not identical, and the first is a nonstarter. A child seeking to inherit property from his natural father under Indiana intestacy law *might* challenge the five-month deadline, arguing that it makes the statute discriminate impermissibly against children born out of wedlock, in violation of the equal protection clause. But it is pretty certain that the argument, and the suit based upon it, would fail. The interest in protecting decedents' estates against phony claims and in winding up these estates promptly and definitively has been held to justify even tighter limitations. *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), held constitutional a state statute that required a court order of filiation before the putative father's death. *S.V. v. Estate of Bellamy, supra,* 579 N.E.2d at 148–49, upheld Indiana's five-month limitation against the challenge just sketched, in reliance on *Lalli.* See also *Trammell on behalf of Trammell v. Bowen,* 819 F.2d 167, 170 (7th Cir.1987).

Applied to this case, the statute upheld in *Lalli* would have required the impossible: a court order of filiation within one month of conception. We cannot be certain that *Lalli,* which involved an adult child seeking to inherit, would have come out the same way had the facts been as in the present case. Several courts have held since *Lalli* that if state law makes it impossible in the circumstances to establish paternity, the law is unconstitutional if applied in those circumstances. *Handley by and through Herron v. Schweiker,* 697 F.2d 999, 1004 (11th Cir.1983); *Cox v. Schweiker,* 684 F.2d 310, 323 (5th Cir.1982). The Fourth Circuit disagrees. *Jones v. Schweiker,* 668 F.2d 755 (4th Cir.1981), vacated because of a change in state law as *Jones v. Heckler,* 460 U.S. 1077, 103 S.Ct. 1763, 76 L.Ed.2d 339 (1983); *Parsons for Bryant v. Health & Human Services,* 762 F.2d 1188, 1190 (4th Cir.1985). So does an Eleventh Circuit decision subsequent to *Handley,* though it involves a different section of the Social Security Act: *Orsini on behalf of Orsini v. Sullivan,* 903 F.2d 1393 (11th Cir.1990). In any event, there is no impossibility here; Christi Haas knew that she was pregnant, and she had five months to sue. She must also have known that since

she neither had been married to the father nor lived with him, his paternity might be questioned. All she had to do was *file* the paternity suit within five months of Scott Glenn's death; the statute does not require that the determination of paternity be made within that (or any other) period. The filing would not be burdensome, and it would provide notice to the estate.

Young Glenn is not seeking a share of his putative father's estate. He is seeking child insurance benefits that are no part of the estate. So the policy of protecting estates is not in play. Another policy is, however. The purpose of federal child insurance benefits, a purpose shared by some but of course not all bequests, is to replace the support that the child would have received from his father had the father not died. *Trammell by Trammell v. Bowen, supra,* 819 F.2d at 169. Consistent with this purpose, the sections of the Social Security Act that define the entitlements of children born out of wedlock, 42 U.S.C. §§ 416(h)(2) and (3), have been crafted not to determine paternity alone but paternity plus likelihood of support. Every father whose parental rights have not been terminated (as by the lawful adoption of the child by another person) has a legal duty to support his child, Ind.Code § 35–46–1–5; 1 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 5.4, p. 317 (2d ed. 1987), but the reality is of course different and many fathers, especially of children born out of wedlock, do not support their children. The fact that Scott M. Glenn, II, is probably the child of the wage earner is not by itself proof or even strong evidence that if Glenn senior had lived he would have supported the child. The Social Security Act establishes criteria designed to identify the likely supporters. The criteria constitute a coarse filter, but not so coarse a one that we are moved to declare the relevant provisions unconstitutional, especially since the appellant's lawyer has no suggestions for an alternative method of screening out the applications of children whose fathers would not have been likely, had they lived, to support them. It is true that Scott's "dependency" was determined in the wrongful-death action, but that determination has no standing under

the Social Security Act, and for all we know may have been based simply on the judgment in the paternity suit.

■ Although the equal protection clause of the Constitution has been interpreted to forbid unreasonable discrimination against children born out of wedlock, e.g., *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); see *Bennemon on behalf of Williams v. Sullivan*, 914 F.2d 987, 988–89 (7th Cir.1990), some difference in treatment is inevitable. The institution of marriage is not purely arbitrary or conventional. One of its advantages— historically one of its most important functions—is to establish a clear framework for the support of children. When the framework is missing, the child is at a disadvantage in establishing a range of entitlements, and one of them is to child insurance benefits under the Social Security Act. With Glenn senior dead, the question what if any support he would have provided to the child of a woman to whom he was not married and with whom he had not been living became inherently uncertain. The fact that he died eight months before the child was born aggravated the uncertainty.

It is true that one of the grounds in the Social Security Act for the award of child insurance benefits is a determination by the Social Security Administration that the wage earner was contributing to the support of the applicant when he died. Financial contributions made by the wage earner to the mother during pregnancy have been construed as support for the as yet unborn child. E.g., *Adams v. Weinberger*, 521 F.2d 656, 660 (2d Cir.1975); *Parsons for Bryant v. Health & Human Services, supra*, 762 F.2d at 1191; *Doran v. Schweiker*, 681 F.2d 605, 609 (9th Cir.1982). How regular and substantial the contributions must be to satisfy the statute remains unsettled, *Bennemon on behalf of Williams v. Sullivan, supra*, 914 F.2d at 990, but the issue is academic here because Glenn senior contributed nothing to the support of the child's mother. We have been given no reason to suppose that he intended to marry or live with her, to contribute to her support or that of the child, or even to acknowledge paternity.

Congress has decided that, all other routes to demonstrating the likelihood of support being closed, if the child's state was willing to allow the child to take by intestacy from the putative father this is enough evidence that the putative father would have supported the child to entitle the child to benefits in lieu of that support taken away by death. Congress may not have been required to go that far. *Mathews v. Lucas*, 427 U.S. 495, 514–15, 96 S.Ct. 2755, 2766–67, 49 L.Ed.2d 651 (1976), holds that Congress was not required to go further. *Mathews* upheld section 416(h)(2), the section on which the Social Security Administration relies in this case, against a challenge that it is too crude a predictor that the deceased father, had he lived, would have supported the child. See also *Imani on behalf of Hayes v. Heckler*, 797 F.2d 508, 513 (7th Cir.1986); *Trammell v. Bowen, supra.* We are mindful that *Daniels on behalf of Daniels v. Sullivan*, 979 F.2d 1516, 1521 (11th Cir.1992), holds that the equal protection clause forbids Congress to use a short state-law deadline for establishing paternity for inheritance to block a claim for child insurance benefits, since support and inheritance involve a different balance of interests. The court in *Daniels* did not explain how its result could be reconciled with *Mathews v. Lucas,* and its conclusion is in conflict not only with the Fourth Circuit's decisions in *Jones* and *Parsons* but also with the Eleventh Circuit's own decision in *Orsini,* as well as with the spirit of our decision in *Imani.*

Even if section 416(h)(2) is invulnerable to constitutional challenge, we are sure, as the Social Security Administration conceded in *Lawrence on behalf of Lawrence v. Chater,* —— U.S. ——, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) (per curiam), that Congress did not intend the incorporation of *unconstitutional* state intestacy statutes. If the five-month deadline in the Indiana statute could not constitutionally be applied in a suit by a child to inherit property, then it could not be used as the basis for denying claims under the Social Security Act. *Cox v. Schweiker, supra*, 684 F.2d at 317–18. But this route, it seems, is blocked by *Lalli.* The Indiana statute *is* constitutional.

With *Lalli* having upheld a limitations period for determining heirship that is even shorter than Indiana's, and *Mathews v. Lucas* having upheld the incorporation of such limitations into the federal statute, the application for benefits in the present cases is doomed unless the Supreme Court is minded to reexamine either decision or unless the present case can somehow be distinguished from *Lalli*. *Mills v. Habluetzel*, 456 U.S. 91, 100, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982), decided after *Lalli*, held that 12 months after the child's birth was an unconstitutionally short deadline for a child born out of wedlock to bring a suit for support against his putative father, and here suit was brought only one month after the child's birth. See also *Pickett v. Brown*, 462 U.S. 1, 18, 103 S.Ct. 2199, 2209, 76 L.Ed.2d 372 (1983); *Clark v. Jeter*, 486 U.S. 456, 464, 108 S.Ct. 1910, 1915–16, 100 L.Ed.2d 465 (1988). Yet none of the opinions in these cases questions the continued validity of *Lalli*. See, e.g., *Mills v. Habluetzel*, *supra*, 456 U.S. at 99, 102 S.Ct. at 1554–55. The cases did not involve claims against an estate, so the policy of winding up estates swiftly was not in the pan on the state's side of the balance. Of course the present case does not involve a claim against an estate either. But Congress's policy, expressly upheld in *Mathews v. Lucas*, is, as we have seen, to tie entitlement to child insurance benefits to entitlement to intestacy benefits, or in other words to make the child's claim against the Social Security Administration depend upon the outcome of a *hypothetical* claim against the estate. If the latter would fail, the former fails. The element of arbitrariness has been deemed tolerable.

*Lalli* is different from this case because, as we pointed out earlier, the claimant there was an adult and had had many years to establish paternity. Similarly, the claimant in *Trammell* had a number of alternative routes to establishing entitlement to the benefits he sought. Our claimant was in a bind, having not yet been born when his putative father died. Nevertheless, as there is no question of its having been *impossible* for the mother to have instituted a paternity suit within five months of the wage earner's death, we cannot find any adequately clear,

minimally predictable basis for carving out an exception to *Lalli*. We *could* hold, as urged by the plaintiff, that a five-month deadline for the bringing of paternity suits on behalf of posthumously born children is unconstitutionally short, even when the object of the suit is to establish a right of inheritance. But then what would be the minimum deadline? Five months after birth? This would give the mother 14 months to sue if the decedent had died immediately after conception, significantly delaying the winding up of estates. The harm from such delay would have to be balanced against the harm to the children. *Lalli* implies that the balance is for the state to strike within limits not here exceeded.

The combined effect of *Lalli* and *Mathews* is to place claimants in the position of young Scott in a box. *Lalli* makes clear that the Indiana statute is constitutional as applied to inheritance, *Mathews* that the Social Security Act is constitutional in incorporating the (constitutional) Indiana statute. Only the Supreme Court possesses the key that will open the box. We cannot be certain that it will turn the key. Courts are inclined to leave arbitrary line-drawing to legislatures. The creation of the exception sought by the plaintiff would entail a degree of statutory fine-tuning that may or may not exceed the Supreme Court's current conception of what the judiciary may properly and feasibly accomplish in the name of the Constitution. That is for the Court, not us, to say.

AFFIRMED.

DIANE P. WOOD, *Circuit Judge*, dissenting.

On the strength of the Supreme Court's decision in *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), in which the Court upheld a New York statute that precluded an adult illegitimate from proving paternity in a probate proceeding, the majority decides today that a child who was a one-month fetus at the time his father died is barred from showing that he was entitled to inherit from his father because the State of Indiana requires such claims to be brought within five months of the father's death.

Ind.Code § 29–1–2–7(b)(1)(B). Because I believe that this result extends *Lalli* far beyond its legitimate reach, and that this ruling conflicts both with the Supreme Court's decisions in *Mills v. Habluetzel*, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982), *Pickett v. Brown*, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983), and *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), and with the decisions of the Court of Appeals for the Eleventh Circuit in *Daniels v. Sullivan*, 979 F.2d 1516 (11th Cir.1992), and *Handley v. Schweiker*, 697 F.2d 999 (11th Cir.1983), I respectfully dissent.

## I.

This case, like the one recently before the Supreme Court in *Lawrence v. Chater*, —— U.S. ——, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996), raises the question whether the Commissioner of Social Security must determine the constitutionality of a state statute before relying upon that law in a benefits determination relying upon 42 U.S.C. § 416(h)(2)(A), and further, if that state statute is unconstitutional, whether benefits are due. As the majority notes, Scott Glenn II's eligibility for benefits under 42 U.S.C. § 402(d) turns on his ability to show that he is a "dependent child of a wage earner." Of the several ways offered in § 416(h) to prove this relationship, the only one available to young Scottie, is proof that he was eligible to inherit under Indiana's intestate succession law, Ind.Code § 29–1–2–7(b). This is so largely because his father, Scott M. Glenn ("Scott Sr."), was tragically killed in an automobile accident only one month after Scottie's conception; thus, the parents did not have time to regularize their relationship by marriage, to obtain a court decree of paternity, to execute a written acknowledgment of paternity, or to take advantage of any of the other avenues provided in the federal statute.

The Indiana intestacy statute allows a child born out of wedlock to inherit only if

(1) The paternity of the child has been established by law in a cause of action that is filed:

    (A) During the father's lifetime; or

    (B) Within five (5) months after the father's death; or

(2) The putative father marries the mother of the child and acknowledges the child as his own.

Ind.Code § 29–1–2–7(b). In this case, the fact that Scott Sr. was Scottie's father was established by the decree of the Allen Superior Court in Indiana, Cause No. 02D07–9212–JP–753, February 9, 1993. In addition, the Allen Superior Court issued an order establishing that Scott Glenn II is the "dependent child" of Scott M. Glenn for purposes of asserting a claim under Indiana's Wrongful Death Statute, Ind.Code § 34–1–1–2, Cause No. 02D01–9402–CT–17, September 9, 1994. Nevertheless, in spite of the fact that every time the Indiana court responsible for the case has confirmed the fact that Scott Sr. was Scottie's father, the Commissioner here has interpreted the Indiana intestacy statute as an absolute bar to his ability to inherit from his father, and therefore to his ability to qualify as a dependent child of the wage earner for purposes of the Social Security Act.

Scottie's mother, Christie Haas, filed the paternity action on Scottie's behalf approximately one month after his birth. However, that was indisputably neither within the father's lifetime nor within five months of his death. The Social Security Administration therefore concluded that Scottie could not qualify under Indiana's intestate succession law, and thus that he did not qualify for benefits. On Scottie's behalf, Haas argues here that the Commissioner's negative determination was wrong on two grounds. First, she contends that the five month limitation in the Indiana statute is merely a statute of limitations, and hence is waivable (and was waived here by the estate). On that theory, Scottie is entitled to inherit under the Indiana intestacy scheme, and he thus is qualified for the Social Security benefits in question. Second, she argues that if the Commissioner correctly read the Indiana law, that law unconstitutionally discriminates against a distinct class of illegitimate children. She further asserts that in the absence of this unconstitutional discrimination, Scottie has proven both his ability to inherit under the intestacy statute and his dependence for purposes of the Social Security Act.

Haas' first argument is appealing for its simplicity, but I agree here with the majority that Indiana law indicates the five-month period is an element of the claim, not an ordinary, waivable, statute of limitations. The administration of estates is an enterprise that typically involves multiple parties, some easily ascertainable and others less so. Thus, unlike the ordinary bilateral lawsuit with specific parties (or their legal representatives, as in class actions) on both sides, it would be harder to know in a probate case from whom waivers would need to be secured for limitation periods like the one in Indiana's statute. The state therefore reasonably can take the position that potential heirs take the necessary steps to establish their relationship to the deceased within a reasonable period of time, so that they are then in a position to join the probate proceeding. Whether, in the ordinary case, it is sufficiently generous to allow illegitimates to obtain a judicial decree of paternity during their father's lifetime or within five months of his death is not the question before us. Instead, the question is whether Indiana expects five-month fetuses or their representatives to bring paternity actions, whether Indiana would construe the five-month limitation period to begin running from the date of a live birth, or if Indiana would take some other approach for posthumously born illegitimate children.

In my opinion, it is not at all clear that Indiana would not toll its five-month substantive limitation period during the time a child is *in utero,* and to have it run thereafter. This is the approach that courts take in similar situations, such as a tort action for injuries suffered prior to birth or a wrongful death action where the parent dies before birth. *See generally* Prosser & Keeton, The Law of Torts § 55, at 368 (5th ed.1984). The fetus does not have a tort cause of action of any kind unless and until that fetus becomes a child, at the moment of live birth. See *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630 (Ind.1991). If the Supreme Court of Indiana disagreed with the appellate ruling in *S.V. v. Estate of Bellamy,* 579 N.E.2d 144 (Ind.App. 1991), and construed its law to require tolling, then Scottie wins easily. His mother filed suit within a month of his birth, well within any five-month limitation period that might have applied. For what it is worth, every indication we have from the Indiana courts involved in Scottie's case supports this approach.

Nevertheless, on the assumption that the majority accurately predicts Indiana's interpretation of its intestate succession statute, it is necessary to reach the constitutional issue. Before turning to the particulars of this case, it is helpful to review the considerable jurisprudence the Supreme Court has developed that relates to classifications based upon legitimacy. In brief, this review demonstrates that the Court applies an intermediate level of scrutiny to this kind of classification, that it will strike down state laws that erect insurmountable barriers to the child's assertion of rights, and that the Court has regularly invalidated state laws that impose unreasonably short periods of time for asserting the rights in question.

In *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), the Court upheld the provisions of the Social Security Act that generally condition eligibility for surviving child's benefits for illegitimate children upon a showing that the deceased wage earner was the claimant's parent and, at the time of death, was living with the child or contributing to his or her support. The application of the provisions of the Social Security Act permitting proof of eligibility by reference to state intestacy laws was not before the Court in *Lucas. See id.* at 501. Instead, the Court rejected the blanket claim that a denial of benefits to illegitimate children whose paternity was "clear" violated the Fifth Amendment of the Constitution when legitimate children would certainly have received the benefits. The state courts in *Lucas* had never issued a declaration of paternity, and the challenge was brought by children who were approximately eight and fifteen years old at the time of their father's death. The Court repeatedly noted, in reaching this result, that it was not applying "strict scrutiny" to the classification at issue, but it did not indicate with precision what lesser level of scrutiny was actually being used.

The next key case, on which the majority relies extensively, was *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). In *Lalli,* the Court considered the constitutionality of a New York statute that required illegitimate children seeking to inherit from their father by intestate succession to demonstrate that a court of competent jurisdiction had made an order of filiation during the lifetime of the father, in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child. Five members of the Court voted to uphold the law. Justice Powell wrote a plurality opinion for himself, Chief Justice Burger, and Justice Stewart; Justice Blackmun wrote a separate statement concurring in the judgment; and Justice Rehnquist wrote his own brief statement concurring in the judgment. The other four members of the Court dissented.

The facts of *Lalli* were significantly different from those presented to us here, and even the majority concedes that it cannot be certain that *Lalli* "would have come out the same way had the facts been as in the present case." *Ante* at 563. The appellant Lalli, who was an adult at the time his putative father died, conceded that he had not obtained the required order of filiation. He claimed, however, that his inability to prove his relationship with the deceased through other means violated the Equal Protection Clause. The judgment of the Court rejected this argument and upheld the New York statute.

In reaching this conclusion, Justice Powell's plurality opinion analyzed the question whether the procedural requirements of the New York law bore "an evident and substantial relation to the particular state interests this statute is designed to serve." *Id.* at 268, 99 S.Ct. at 524. Emphasizing the State's interest in the just and orderly disposition of property at death, the "peculiar problems of proof" for paternal inheritance, and the need to avoid spurious claims, the plurality was persuaded that the New York statute drew constitutionally acceptable lines. It distinguished *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), which had struck down an Illinois inheritance law that

discriminated against illegitimates, as a case where the state law "effected a total statutory disinheritance of children born out of wedlock who were not legitimated by the subsequent marriage of their parents." 439 U.S. at 273, 99 S.Ct. at 527.

In every case dealing with illegitimacy since *Lalli,* the Supreme Court has struck down state statutes that impose unrealistic burdens on children attempting to establish paternity for support purposes. In *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982), the Court faced an Equal Protection challenge to a Texas statute that required an illegitimate child to bring a paternity action before his or her first birthday. Like the Indiana statute here, the Texas limitation period was considered as part of the substantive right, not simply as a procedural limitation on that right. Justice Rehnquist, writing for the Court, began by observing that a State that grants an opportunity for legitimate children to obtain support must also grant that opportunity to illegitimate children, and that opportunity must be more than illusory. He continued:

> The period for asserting the right to support must be sufficiently long to permit those who normally have an interest in such children to bring an action on their behalf despite the difficult personal, family, and financial circumstances that often surround the birth of a child outside of wedlock.

*Id.* at 97, 102 S.Ct. at 1553. Although the states may impose greater restrictions on illegitimate children than on legitimate children, because of the risk of stale or fraudulent claims, those restrictions themselves must pass equal protection scrutiny.

*Mills* established two related requirements for the necessary equal protection analysis. First, the period for obtaining support granted to illegitimate children must be sufficiently long in duration to present a "reasonable opportunity for those with an interest in such children to assert claims on their behalf." *Id.* at 99, 102 S.Ct. at 1555. Second, any time limitation placed on that opportunity must be substantially related to the State's interest in avoiding the litigation of stale or fraudulent claims. *Id.* at 99–100, 102 S.Ct. at

1554–56. The Court noted in passing that *Lalli* and *Trimble* involved the right of illegitimate children to inherit, while *Lucas* involved the right of illegitimate children to receive social security benefits. But, it said, "[t]here is no reason to think that the factual differences between those cases and the present case call for a variation of the general principle which those cases have laid down." *Id.,* 456 U.S. at 99 n. 5, 102 S.Ct. at 1555 n. 5. Applying those two requirements to the case before it, the Court concluded that the Texas requirement was an unrealistically short period of time, which "so restrict[ed] those rights as effectively to extinguish them," *id.* at 101, 102 S.Ct. at 1555, and it struck down the Texas statute.

*Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983), came to the same conclusion about a Tennessee statute that required a child to file a petition for a determination of paternity and support within two years of his or her birth. The Court saw no meaningful distinction between the one-year rule invalidated in *Mills* and the two-year rule before it. The hardships on the child's representatives were likely to be the same, and the time limitation was not substantially related to the State's interest in avoiding stale or fraudulent claims. Repeating language from *Mills,* the Court said "[w]e can conceive of no evidence essential to paternity suits that will be lost in only [two years], nor is it evident that the passage of [24] months will appreciably increase the likelihood of fraudulent claims." *Id.,* 462 U.S. at 13–14, 103 S.Ct. at 2207 (internal quotations omitted). The Court also noted that scientific advances in blood testing have alleviated the problems of proof in paternity actions, which further undermined the relationship between the period of limitations and the State's interests.

*Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), is yet another case to the same effect. In *Clark,* the Court invalidated a Pennsylvania statute that required an illegitimate child to bring a suit to establish paternity within six years of her birth. In so doing, the Court stated openly what had been implicit in its prior decisions: these kinds of statutes must pass intermediate scrutiny, which means that the statutory classification must be substantially related to an important governmental objective. *Id.* at 461, 108 S.Ct. at 1914.

The Eleventh Circuit has had two occasions to decide cases almost identical to the one before us now. In *Handley v. Schweiker,* 697 F.2d 999 (11th Cir.1983), the Secretary of Health and Human Services denied an application for child's insurance benefits under 42 U.S.C. § 402(d)(1) on the ground that the child had not shown she was entitled to inherit under the Alabama intestacy statute. That statute required a judicial determination of paternity within the father's lifetime. The father in question, however, had been fatally injured in an automobile accident and had fallen into a coma some four months before her birth. He remained in the coma until four months after her birth, when he died.

Guided by *Mills,* the court of appeals found that the Alabama scheme presented an insurmountable barrier for a subclass of illegitimate children. It noted that the problems for the child and her family recognized in *Mills* were, if anything, even worse when accompanied by the emotional and economic turmoil caused by the father's death. It distinguished *Lalli* on grounds equally pertinent here: *Lalli* was a private dispute over estate distribution brought by an adult son who had had plenty of time to obtain an order of filiation, and the statutory scheme was "a minor procedural nuisance" rather than a "total statutory disinheritance" (citing language in *Lalli* that distinguished *Lalli* from *Trimble* ). 697 F.2d at 1004. In *Handley,* as a practical matter there was no time when both parent and child were simultaneously alive; "[t]he erstwhile procedural hurdle became an unconstitutional complete and impenetrable barrier." *Id.* *See also Daniels v. Sullivan,* 979 F.2d 1516 (11th Cir.1992) (invalidating for Social Security Act purposes a Georgia statute that required an illegitimate child to establish paternity during the lifetime of the father, when child was two years, five months old at the time of father's death).

Although the Fourth Circuit arguably came to a different result in *Parsons v.*

*Health and Human Services,* 762 F.2d 1188 (4th Cir.1985), it is more accurate to say that the Fourth Circuit had a different approach to this kind of case. Following its earlier conclusion in *Jones v. Schweiker,* 668 F.2d 755 (4th Cir.1981), vacated sub nom. *Jones v. Heckler,* 460 U.S. 1077, 103 S.Ct. 1763, 76 L.Ed.2d 339 (1983), the Fourth Circuit concluded in *Parsons* that even if a state intestacy statute is unconstitutional, the illegitimate child is not entitled to Social Security benefits under § 416(h)(2)(A). In fact, this was once the position of the Social Security Administration, but that has changed. In his response to the petition for certiorari in *Lawrence v. Chater, supra,* the Solicitor General announced that the Social Security Administration now interprets the Social Security Act as requiring "a determination, at least in some circumstances, of whether the state intestacy statute is constitutional." —— U.S. at ——, 116 S.Ct. at 605. The Court granted the Lawrence petition, vacated the decision of the Fourth Circuit denying benefits, and remanded for reconsideration in light of the Administration's change of position.

Even if the Social Security Administration had not changed its view, I would have taken the position that the Commissioner is not entitled to make an unconstitutional state statute part of the Social Security system, and thus to adopt an unconstitutional distinction between legitimate and illegitimate children. Constitutional limitations would be meaningless if the Commissioner could effectively incorporate into federal law state statutes that discriminated on the basis of race, that imposed prior restraints on speech, or that denied free exercise of religion. I can only assume that the agency also came to this realization, when it took a closer look at the implications of its former view.

Thus, the first step in our analysis here is to decide whether the Indiana statute, as applied to the class of illegitimate children to which Scottie belongs (posthumously born more than five months after the father's death), violates the Equal Protection clause. If so, it would also violate the Constitution for the Commissioner to use that statute to deny Scottie's benefits. Since the Indiana courts have already issued an order of paternity, nothing would remain here but to reverse the denial of benefits and remand to the agency for a determination of how much is due.

*Mills, Pickett,* and *Clark,* not *Lalli,* provide the analytical approach for our constitutional analysis. The first question is whether the period for obtaining the paternity decree for purposes of the intestacy statute is sufficiently long in duration to present a reasonable opportunity to assert the claim; the second question is whether the time limitations in question are substantially related to an important governmental objective.

For the subclass of illegitimate children who are *in utero* at the time of their father's death, and who are not yet born within five months of his death, it is beyond imagination how anyone can claim that the period of time is sufficiently long in duration to present a reasonable opportunity to assert the claim. They are even worse off than the child in *Handley:* there is not a moment when these children are alive either during their father's lifetime or in the five-month extension provided by the statute. If one year after birth was not enough for the paternity action in *Mills,* if two years after birth were not enough for the paternity action in *Pickett,* if six years after birth were not enough for the paternity action in *Clark,* it is hard to see how this time period could possibly qualify. This statute gives children in Scottie's position no time at all after their birth to bring the paternity action that is the predicate for intestate succession. For this class, the statutory scheme is not one that is fair *ex ante,* but which results in the occasional unjust outcome from an *ex post* perspective. By its very nature, as the Indiana appellate court observed in *Bellamy,* it always excludes the class of posthumously born illegitimate children at issue here.

The Indiana statute fares no better when we turn to the second part of the test: substantial relationship to important state interests. Intestacy proceedings share many of the concerns that the Supreme Court identified for support actions. The state will want to avoid stale or fraudulent claims, and it will want to assure that the probate proceeding is concluded within a reasonable period of time.

I disagree with the majority's conclusion that the five-month rule bears the necessary relationship to those interests here.

First, with respect to stale or fraudulent claims, I consider *Mills, Pickett,* and *Clark* to be practically dispositive. Indeed, requiring pregnant women in Christi Haas' position to rush off to the courthouse and file a paternity action the moment they learn of the death of the father of their child could wind up wasting time for the probate court. Suppose the court acted with dispatch, and rendered an order of paternity by the time the pregnancy was four months along. Suppose further that the woman miscarried at month eight. Would the fetus be entitled to an estate? Would the estate inherit from the father? As the heir of the child, would the mother thus be entitled to take from the father? The answers to these questions are all no, under the laws of every state of the United States. The court would be required to dismiss all potential claims on behalf of the child, having wasted its time on contingencies that were never fulfilled.

Accuracy of paternity determinations is also impeded, not helped, by requiring filings during pregnancy. Unless the State of Indiana is willing to risk the health of fetuses by subjecting them to dangerous *in utero* invasive procedures, blood tests are out of the question until the child is born. Thus, the only way to prove paternity at such an early stage would be through less reliable anecdotal evidence. True, the State could require the mothers to file "place holder" lawsuits that would become activated only after the birth of a child. But the difference between this and Haas' actual course of conduct is vanishingly small. She filed within a month of giving birth, at a time when every mother is still feeling physically worn out from the birth process and from the midnight feedings. I cannot find that the State had an "important interest" in having some paper sit in the probate court for six months before the paternity action could really proceed.

Next, I consider the State's interest in speedy disposition of estates, on which the majority relies heavily. For the subclass to which Scottie belongs, that doesn't work either. Unless the need to wait for a child *en*

*ventre sa mere* to be born has the effect of holding up any significant number of probate proceedings, this too fails intermediate scrutiny. Although it is somewhat difficult to find reliable statistics from probate courts, the typical time for resolving a simple estate appears to be anywhere from a year and a half to two years. Turner, *Revocable Trusts,* § 1.07 (3d ed. 1995). Obviously, an unborn child will not enter the picture any later than nine months after the father's death. Assume for the sake of argument that (1) the five month period began to run as soon as there was a live birth, (2) the child was conceived on the same day as the father's death, and (3) the estate was opened at the very moment of the father's death. Even on those extreme facts, the need to wait for the birth of the child would still take us only to month fourteen, well below this typical time span. Plainly, the normal case would involve significantly shorter periods of "delay," during which the probate court would probably be conducting its other business in the case.

Finally, I believe that the majority erroneously second-guesses Indiana's decision to declare that Scott Sr. was Scottie's father. It argues that this was not a true adversarial proceeding, like some (though surely not all) paternity cases, because it was uncontested and the family had nothing to lose. Without any basis in the record, it implies that the Indiana decree might have been tainted by fraud. It states, as if it were an established fact, that the grandmother had "no stake" in the paternity suit. I disagree. The death of a father like Scott Sr. does not mean that his family loses all incentive to oppose a fraudulent paternity action. A positive declaration of paternity will have far-reaching implications for the family beyond these Social Security benefits. For example, the declaration of paternity makes it clear under Indiana law that Scottie is the grandchild of Scott Sr.'s mother. This status may be important under her will, for support obligations, under insurance policies designating "children" as beneficiaries, for employee survivor benefits, or for a host of ancillary legal obligations wholly apart from the intestacy laws. What if something happens to Christie Haas, so that she becomes unable to care for Scottie? In

the vast majority of states, the family courts frequently look to the child's grandparents as the best substitute guardians. Second, unless we think that potential defendants have infinitely deep pockets, the addition of more plaintiffs to the wrongful death action risks dividing the pie further. Third, the majority seems to assume that the Indiana court was not conscientious in making its determination on paternity, in spite of Christi Haas' prompt action and the consequent ease with which the facts could be ascertained. Finally, support of a child is a financial and emotional burden for the extended family just as it would be for the father. This family, like any other, would have every reason to send a woman packing if she appeared on the doorstep and falsely insinuated that she had the child of a recently deceased son.

## II.

It is unlikely in the extreme that the Indiana legislators who wrote Ind.Code § 29–1–2–7(b) were thinking about its effect on one-month gestation fetuses when they inserted the five-month limitation on claims. But whether or not they were, the application of that rule to the class of illegitimate children who are not born in time to bring the necessary paternity action for intestate succession violates the Equal Protection Clause of the Constitution. Because the Commissioner of Social Security cannot incorporate an unconstitutional state statute in her test for benefits under § 402(d), and because Scottie has otherwise fully proven that he would be entitled to inherit for purposes of § 416(h)(2)(A) through his prompt securing of the decree of paternity, I would reverse and remand this case to the Commissioner for a determination of the benefits to which he is entitled.

Before POSNER, Chief Circuit Judge, and CUMMINGS, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, ILANA DIAMOND ROVNER, DIANE P. WOOD, and TERENCE T. EVANS, Circuit Judges.

### ORDER

May 15, 1996

Rehearing en banc is granted and the panel decision vacated.