**Tamara KIENUTSKE, for Jacob Dale Mosley, Plaintiff**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**Civil Action No. 03–73866.**

United States District Court, E.D. Michigan, Southern Division.

Nov. 30, 2004.

Patrick J. Marutiak, Owosso, MI, for Plaintiff.

Francis L. Zebot, U.S. Attorney's Office, Detroit, MI, Defendant.

***ORDER ADOPTING THE MAGISTRATE'S REPORT AND RECOMMENDATION [11], REVERSING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY, AND REMANDING FOR AN AWARD OF BENEFITS***

TARNOW, District Judge.

Before the Court are competing motions for summary judgment [docket entries 8 & 9] by the parties. On October 21, 2004, the magistrate filed a Report and Recommendation (R&R), recommending that this Court grant Plaintiff's motion and remand the case for an award of benefits or, in the alternative, remand for further consideration of after-acquired evidence. No objections to the R&R have been filed.

The issue in this case is whether there is sufficient evidence to support the finding of the Administrative Law Judge (ALJ) that Jacob Dale Mosley, a minor, is not the child of Rodney Mosley, the deceased wage earner. This Court is in agreement with the magistrate that there is satisfactory evidence that Jacob Dale Mosley is Rodney Mosley's child and that the magistrate's finding is not supported by sufficient evidence.

Accordingly, the Court **ADOPTS** the R&R [11] as the findings and conclusions of the Court. Plaintiff's motion for summary judgment [8] is **GRANTED**, and Defendant's motion for summary judgment [9] is **DENIED**. The decision of the Commissioner of Social Security is **REVERSED** pursuant to 42 U.S.C. § 405(g), and the case is hereby **REMANDED** to the Commissioner of Social Security for an award of benefits under Title II of the Social Security Act.

**IT IS SO ORDERED.**

## *REPORT AND RECOMMENDATION*[1]

WHALEN, United States Magistrate Judge.

Plaintiff Tamara Kienutske brings this action on behalf of her infant son, Jacob Dale Mosley, under 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying Jacob Dale Mosley Title II Child Survivors Benefits on the

---

1. The Court acknowledges the substantial contributions of Law Clerk Amy J. Humphreys to the preparation of this Report and Recommendation.

record wage earner Rodney D. Mosley. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be denied, that Plaintiff's Motion for Summary Judgment be granted, and that the case be remanded for an award of benefits. In the alternative, I recommend that the case be remanded for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g), with this Court retaining jurisdiction.

### PROCEDURAL HISTORY

On December 1, 2000, Plaintiff filed an application under Title II of the Social Security Act 42 (Tr. 19–21, 26–27). After denial of her claim, Plaintiff filed a timely request for an administrative hearing, conducted on September 17, 2002 in Lansing, Michigan before Administrative Law Judge (ALJ) B. Lloyd Blair. Plaintiff, represented by attorney Sarah Bouck, testified. (Tr. 89–96). Plaintiff's mother, Sharon Kieutsky, also testified (96–98). ALJ Blair found that Plaintiff was not entitled to Child Survivors Benefits because Jacob Dale Mosley "could not found to be the child of Rodney D. Mosley under Sections 216(h)(2)(A) [2] and 216(h)(3)(C) of the Social Security Act (Tr. 13)."

On August 15, 2003 the Appeals Council denied review (Tr. 4–6). Plaintiff filed for judicial review of the final decision on September 29, 2003.

### I. BACKGROUND FACTS

#### A. History and Plaintiff's Testimony

Rodney D. Mosley, wage earner, died on July 7, 2000 (Tr. 79). On November 4, 2000, Tamara Kienutske gave birth to Jacob D. Mosley (Tr. 55). Ms. Kienutske and Mr. Mosley began dating in November of 1999 and according to Ms. Kienutske's testimony, he began living with her at her parents' house "six days out of the week" beginning in December of 1999 (Tr. 91). Ms. Kienutske reported, however, that Mr. Mosley also maintained an apartment in Novi, Michigan which he shared with a roommate (Tr. 91–92). According to Ms. Kienutske, he continued to maintain the Novi residence address to be closer to his physicians (Tr. 92). Ms. Kienutske reported that Mr. Mosley worked for General Motors in Warren in November 1999, but by the time she discovered her pregnancy in April of 2000, Mr. Mosley had ceased work and was receiving disability benefits (Tr. 90, 93).

Ms. Kienutske testified that Mr. Mosley took her to Tennessee to meet his parents, financing the entire trip (Tr. 93–94). She reported that Mr. Mosley regularly bought groceries for Ms. Kienutske and her parents (Tr. 94). She reported that Mr. Mosley borrowed money from her mother so Ms. Kienutske and he could set up an apartment together in Owosso. (Tr. 94).[3] In addition to borrowing money from her mother for the deposit for their apartment, Ms. Kienutske reported that Mr. Mosley bought a crib, stroller, and a car seat at a yard sale in anticipation of the baby's birth (Tr. 94).

Ms. Kienutske testified that she and Mr. Mosley moved into the Owosso apartment around July 1, 2000 (Tr. 94–95). She testified that she found him dead in the living room of their apartment when she came home from work on July 7, 2000 (Tr. 95). She testified that at the time of Jacob's birth, she wanted to list Rodney Mosley as the child's father on the birth certificate,

---

2. Section 216(h)(2)(A), etc. of the Social Security Act, changed since the administrative hearing, is now cited as 416(h)(2)(A), etc.

3. In the transcript, the town of "Owosso" is mistranscribed as "Wausau."

but hospital personnel informed her that in order to do so, his signature would be required (Tr. 95). At the hearing Ms. Kienutske testified that there was no possibility that anyone but Mr. Mosley could be Jacob's father (Tr. 93).

Sharon Kienutske, Tamara Kienutske's mother, also testified that Rodney Mosley regularly bought food for her household and assisted her at her job delivering newspapers (Tr. 97–98). She reported that Mr. Mosley acknowledged his belief to her that he fathered the child Tamara was carrying (Tr. 97).

At the hearing's conclusion, Plaintiff's attorney, Sarah Bouck, informed ALJ Blair that "there was quite an attempt made to track down a blood sample".... "[I]t turned out that there is none." (Tr. 99). Ms. Bouck reported that Korey Mosley, Mr. Mosley's son from a previous relationship, indicated that he would cooperate in providing a blood sample (Tr. 99). Ms. Bouck requested that the court hold the record open "if the court feels that [it] is necessary for it's decision" while the blood tests were being performed. ALJ Blair stated that he had not "made up [his] mind as to whether or not [he would] need [blood samples to complete his decision]." He indicated that "it couldn't hurt, certainly." (Tr. 99). Due evidently to Plaintiff's inability to pay for the blood test, Ms. Bouck asked the ALJ if Social Security funds could be used (Tr. 99). The ALJ replied that funding was "a possibility," adding, "I don't know what the cost is then. And it's prohibited where what funds we have available for those at this point in time." [4] Ms. Bouck requested

ninety days to obtain blood tests (Tr. 100). ALJ Blair indicated that he would give Plaintiff until December 17, 2002 to perform blood tests (Tr. 100).

However, following a referral for blood/paternity testing from the Office of Hearings and Appeals, the Disability Determination Service (DDS) stated that paternity testing was impossible (Tr. 69–71):

> "Since a blood sample from the parent is required for these test[s] and he is deceased, perternity [sic] testing is not possible in this case. Therefore, this case is being sent back to OHA." (Tr. 71).

### B. The ALJ's Decision

ALJ Blair denied benefits to Plaintiff on November 21, 2002 (Tr. 8). He found that Plaintiff failed to establish that Rodney Mosley fathered Jacob Mosley under the criteria mandated by the Social Security Administration for determining parentage (Tr. 14).

First, using the parameters of § 216(h)(2)(A), ALJ Blair held that a finding of parentage "must be based upon the law that, in determining inheritance rights to intestate personal property, would be applied by the courts of the state where the insured individual was domiciled at the time of his death" (Tr. 12). The ALJ cited The Michigan Probate Code, MCLA § 700.111(4),[5] which indicates for the purposes of intestate succession for a child born out of wedlock, an individual can be considered the natural father if he signs a written acknowledgment of paternity, requests along with the mother to be added

---

4. This Court quoted ALJ Blair's last two sentences regarding the possibility of Social Security funding as taken verbatim from the hearing transcript. I cannot ascertain whether the ALJ's statement is mis-transcribed, but as read, does not determine whether Social Security funding is possible (as stated in the preceding sentence), but limited by funding

restrictions, or, contradicting his previous sentence, stating that funding is flatly prohibited in the present case (Tr. 99).

5. This statute was repealed prior to the hearing, effective April 1, 2000, and superseded by M.C.L.A. § 700.2114(c)(i-iv).

to the child's birth certificate, or the man and child have a "mutually acknowledged relationship which began before the age of 18. . . ." (Tr. 13).

Second, the ALJ cited § 216(h)(2)(B), noting that Mr. Mosley and Ms. Kienutske never married or had a marriage ceremony, either of which would have determined Jacob Mosley's paternity under the Social Security Act (Tr. 12, 13). Third, stating that Plaintiff had failed both prongs of the two-part test of § 216(h)(3)(C), the ALJ ruled that he could not find Plaintiff Jacob Mosley to be Rodney Mosley's son because the Plaintiff had not submitted "satisfactory evidence" indicating parentage, nor had she established that Plaintiff was "either living with or supporting" Plaintiff at the time of the alleged father's death. (Tr. 13, 14).

The ALJ discounted several affidavits submitted by family and friends which indicated that Rodney Mosley had acknowledged that he fathered Jacob as not "sufficiently conclusive to establish paternity." (Tr. 12). Moreover, the ALJ held that prenatal medical records listing Rodney Mosley as the father of Jacob were "only based on subjective information given to them" (Tr. 13). He pointed out that an affidavit prepared by Rodney Mosley's mother indicated that Mosley told his mother she was going to be a grandmother again, but that the affidavit "never said directly that [Tamara Kienutske] was the mother of his unborn child." (Tr. 13).

### C. Subsequently Acquired Evidence

On March 5, 2003, after Plaintiff filed her petition to the Appeals Council, the Shiawassee County Probate Court issued an order determining that Jacob Mosley was an heir of decedent, Rodney Mosley (Tr. 82). Although the Appeals Council indicated that it would consider the court order, on August 15, 2003 it denied review of the ALJ's decision (Tr. 4–6). Plaintiff filed for judicial review on September 29, 2003.

## II. STANDARD OF REVIEW

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir.1985). Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986)(en banc).

In determining the existence of substantial evidence, it is not the function of this court to try cases de novo, resolve conflicts in the evidence, or decide questions of credibility. *Brainard v. Secretary of Health & Human Services,* 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984). The substantial evidence standard "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen,* 800 F.2d at 545. If the Commissioner's decision is supported by substantial evidence, a reviewing court must af-

firm. *Studaway v. Secretary of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir.1987); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

## III. CHILD SURVIVOR BENEFITS

The Social Security Act provides for survivor benefits for children of deceased wage earners who meet certain criteria. The child must be under eighteen, unmarried, and satisfy one of several statutory definitions to be considered the "child of the deceased wage earner." 42 U.S.C §§ 402(d) and 416(h).

The only statutory definitions of "child of the deceased wage earner" applicable to the present case are found, first, in § 416(h)(2)(A), which provides:

"In determining whether an applicant is the child of a parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State, in which he was domiciled at the time of his death ... Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such."

The other portion of the Act relevant to Plaintiff's claim, found in § 416(h)(3)(C), presents an alternative means by which the Social Security Administration can find that a claimant is the child of the wage earner. In the absence of proof of marriage to the claimant's mother or a court order of child support, the claimant must provide other "satisfactory evidence" to show proof of paternity *and* prove that the alleged father was either living with *or* contributing to the support of the applicant when he died. *Id.*

## IV. ANALYSIS

### A. Substantiality of Evidence of Paternity and Support

■ 42 U.S.C. § 416(h)(3)(C)(ii) provides that a claimant is entitled to survivor's benefits if he or she presents "satisfactory evidence" that the insured individual was the father of the claimant *and* the insured individual was either living with *or* contributing to the support of the applicant when he died.[6] I conclude that Plaintiff satisfies both requirements.

First, as to the statutory requirement that there be "satisfactory evidence" of paternity, the Plaintiff submitted a wealth of uncontradicted evidence that Rodney Mosley was Jacob Mosley's father. Ms. Kienutske herself testified at the hearing that Mr. Mosley was Jacob's father, and that there was no possibility that anyone else could be the father (Tr. 93). She stated by affidavit that she "did not have sexual relations with anyone other than Rodney D. Mosley during the period of time my child Jacob was conceived. There is no possibility that anyone other than

---

6. In *Parker v. Schweiker*, 673 F.2d 160, 163 (6th Cir.1982), the Court noted that § (h)(3)(C)(ii) "is clearly intended to permit an applicant to prove parentage by a deceased insured in the absence of the formal indicators recognized by" §§ (h)(2)(B), (h)(3)(A), (h)(3)(B), and (h)(3)(C)(i). The "formal indicators" set forth in those sections include a written acknowledgment of paternity, a marriage ceremony, and a court order of child support. *Parker* held that "[t]he Secretary may not consider the lack of these formal indicators as evidence against the applicant who must rely on section 416(h)(3)(C)(ii)." *Id.* This admonition is especially compelling in cases where, as here, the putative father dies before the child is born.

Rodney D. Mosley is the natural father of Jacob Dale Mosley." (Tr. 32). Ms. Kienutske also stated that during her pregnancy, Mr. Mosley accompanied her to her medical appointments (Tr. 34). Ms. Kienutske's mother, Sharon Kienutske, testified that Mr. Mosley acknowledged paternity to her (Tr. 97).

The evidence was clear and uncontroverted that Ms. Kienutske and Mr. Mosley were functioning as a couple before and during her pregnancy, up to the time of Mr. Mosley's death: Mr. Mosley stayed with Ms. Kienutske and her family, regularly contributed to the household food expenses, and took Ms. Kienutske to Tennessee to visit his family. Ruth Mosley, Mr. Mosley's mother, stated, "Rodney had visited me in Tennessee last April, 2000. He had told in April I was going to be a grandmother again" (Tr. 28). Mr. Mosley also took Tamara to Kettle Island, Kentucky, to meet his aunt and uncle. Maureen Barnette, his aunt, recounted the visit:

> "Around the middle of May, 2000, we were visited by Rodney Mosley and girlfriend Tamie Kienutske. During the visited (sic), Rodney Mosley stated that Tamie Kienutske was pregnant with his child and they were planning on getting married at a later date." (Tr. 42).

In anticipation of his son's birth, Mr. Mosley also purchased a crib, a stroller and an infant car seat (Tr. 94).

Plaintiff also submitted eight affidavits demonstrating that Rodney Mosley was overjoyed at the prospect of he and Tamara becoming parents, and that he made it widely known that he was the father of Tamara's baby (Tr. 31–42). In addition to telling his mother that she was to become a grandmother, he verbally acknowledged paternity to Tina Goodman (Tr. 31), Crystal Luft (Tr. 36), Linda Johnson (Tr. 37), Thomas Kienutske, Tamara's father ("Tamara found out she was pregnant and Rodney started telling everyone he was going to be a daddy again") (Tr. 38), Sandra Berry (Tr. 39), Korey Mosley, Rodney's other son (Tr. 40), and Rodney's aunt, Maureen Barnette (Tr. 42).

In addition, medical records from the Shiawassee County Health Department indicate that Ms. Kienutske consistently acknowledged Mr. Mosley as the father of her child, beginning as early as one week after Mr. Mosley's death, and about five months before Jacob's birth (Tr. 51–54)

While evidentiary determinations are generally entrusted to the ALJ's discretion, the court in *Mc Bride v. Heckler,* 619 F.Supp. 1554, 1563 (D.N.J.1985) cautioned that "the phrase 'evidence satisfactory to the Secretary' could conceivably mean that the Secretary has unbridled discretion to determine what evidence is sufficient. But discretion does not usually include the right to act arbitrarily or without criteria" (quoting *Appalachian Power Co. v. Environmental Protection Agency,* 477 F.2d 495, 507 (4th Cir.1973)).

In the present case, the ALJ rejected the numerous affidavits submitted by the Plaintiff, as well as the medical records, as "self-serving conclusory allegations" and "subjective information" (Tr. 13–14). The ALJ also apparently supported his findings by stating that "[n]o DNA testing has ever been done to establish paternity" (Tr. 13).[7] However, in *McBride v. Heckler, supra* at 1563, the court overturned the

---

7. The absence of one piece of evidence—in this case, blood evidence that was impossible to obtain because of Mr. Mosley's untimely death—cannot be considered affirmative substantive evidence to rebut otherwise uncontradicted proof of paternity. *See Coulston v.*

*Apfel,* 224 F.3d 897, 901 (8th Cir.2000)(concurring opinion of Bye, J.) ("I conclude that the ALJ's decision is *not* supported by 'substantial evidence,' for the simple reason that the Commissioner introduced no evidence to

ALJ's findings because they were not based on substantial evidence, holding that "the sworn statements of [Plaintiff's] family members should have been accepted by the Secretary as satisfactory evidence under 42 U.S.C.A. § 416(h)(3)(C)(ii)."

In attempting to parse some basis in the record to find non-paternity, the ALJ in this case apparently attached great significance to the wording of the written statement of Ruth Mosley, Rodney's mother, which indicates that her son "never said directly that 'Tami was the mother of his unborn child,'" but that her son told her "that she was going to be a grandmother again" and further stated that she knew that her son "was involved with Tami Kienutske." (Tr. 13, *quoting* Tr. 28). Apart from again attempting to improperly draw a substantive inference from the absence of evidence, the ALJ failed to place Mrs. Mosley's statement in its proper context. Rodney visited her in Tennessee in April of 2000; he brought Tamara Kienutske with him; Ms. Kienutske was pregnant at the time; Rodney told his mother that she was going to be a grandmother. Who does the ALJ think Rodney was talking about? Was it really necessary for him to state the obvious? [8]

In *Davis v. Apfel*, 133 F.Supp.2d 542, 547 (E.D.Mich.2001) the court held that

"[t]he reviewing court must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard." *Id.* The court cautioned, however, that "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.; Laskowski v. Apfel*, 100 F.Supp.2d 474, 482 (E.D.Mich. 2000). *See also Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir.1981) (" 'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record"); *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir.1983) ("Nor is evidence substantial if it is overwhelmed by other evidence ...").

In *Morales v. Bowen*, 833 F.2d 481 (3rd Cir.1987), the Court found that there was not substantial evidence to support an ALJ's finding of non-paternity where the claimant presented uncontradicted evidence that the deceased person was the father of the child who was claiming survivor benefits.[9] This evidence included the

---

controvert Coulston's account of events ... As a matter of logic, the utter absence of evidence in the record cannot be deemed 'substantial' ")(emphasis in original); *Gilbrook v. City of Westminster*, 177 F.3d 839, 871 (9th cir.1999) (drawing inference "from lack of evidence would amount to no more than speculation").

8. The ALJ also noted an apparent discrepancy in accounts of when Ms. Kienutske and Mr. Mosley began cohabitating (Tr. 12). Ms. Kienutske initially reported that she and Mr. Mosley began living together at the end of 1999 when he moved into her parents' residence, later clarifying that she and Mr. Mosley did not live independently as a couple until approximately July 1, 2000. (Tr. 95).

Although Ms. Kienutske's undisputed testimony establishes that she was living with Rodney Mosley on July 7, 2000, when she arrived home from work to find him dead, the entire issue is irrelevant to the extent that, as indicated below, the evidence establishes that Mr. Mosley was contributing to the unborn child's support at the time of his death, which satisfies the statutory requirement without an analysis of whether or not he "lived with" Ms. Kienutske.

9. *Morales* did not involve the question of "satisfactory evidence" under § 416(h)(3)(C)(ii), but rather dealt whether paternity had been shown by a preponderance of the evidence under New Jersey law. Nevertheless, the reasoning of *Morales*—that "substantial evi-

**564**

mother's testimony, affidavits from other family members that the decedent had verbally acknowledged paternity, and evidence of at least a minimal level of support, such as buying a crib and providing small, regular payments. Noting that "the Secretary presented no evidence," *id.*, at 487, the Court rejected the ALJ's finding of non-paternity, adding:

"Although the Secretary has challenged appellant's evidence, he has failed to introduce any evidence whatsoever that could lead a fact finder to believe that Santiago is not the father." *Id.*

Given that the evidence of paternity in the present case was completely uncontradicted, the Fourth Circuit's decision in *Veeney v. Sullivan,* 973 F.2d 326, 332 (4th Cir.1992), is particularly *apropos:*

"Finally, to close his discussion, the ALJ repeated his harangue about [Plaintiff's] failure to get a state court paternity determination, which was irrelevant to the question before him.... Moreover, the magistrate judge's statement that the task of weighing 'conflicting' evidence is best left to the ALJ is not dispositive where, as here, *there was no conflicting evidence*—every piece of evidence pointed to [the wage earner] as [Plaintiff's] father." (Emphasis in original).

The ALJ's conclusion that there was "insufficiently conclusive" evidence to establish paternity is not supported by substantial evidence. I therefore find that the Plaintiff has met the first prong of § 416(h)(3)(C)(ii), having presented unrebutted satisfactory evidence that Rodney Mosley was the father of the minor child, Jacob Mosley.

The second prong of § 416(h)(3)(C)(ii) has also been met because Plaintiff has shown that the "insured individual (Rodney Mosley) was living with or contribut-

ing to the support of the applicant at the time such insured individual died." *Id.*

While there is some conflict in the testimony as to when Mr. Mosley began residing with Ms. Kienutske at her parents' house (*see* fn. 7, *supra* ), and a possible question as to whether he would be considered to be living there while he also maintained a separate apartment, the evidence is uncontradicted that (1) he borrowed money from Ms. Kienutske's mother for the purpose of establishing a joint residence, and (2) on July 1, 2000, one week before his death, he and Ms. Kienutske began living together in Owosso. Ms. Kienutske discovered him dead at their apartment on July 7, 2000. The statute requires only that the insured person is living with the applicant *at the time the insured individual died;* it does not require that they must have lived together some minimum period of time.

Furthermore, apart from the question of whether Mr. Mosley was living with Ms. Kienutske at the time of his death, the ALJ's conclusion that the decedent "was not contributing to [Plaintiff's] support at the time of his death" (Tr. 14) is not supported by substantial evidence.

The statute itself requires a showing that the insured person contributed to the support of the applicant, but does not delineate any particular level of support. However, 20 C.F.R. § 404.366(a)(2) defines contributions as follows:

"Contributions must be made regularly and must be large enough to meet an important part of your ordinary living costs. Ordinary living costs are the costs for your food, shelter, routine medical care, and similar necessities. If the insured person only provides gifts or donations once in a while for special purposes, they will not be considered contributions for your support. *Al-*

dence" cannot arise from a lack of evidence—

is pertinent to the present case.

*though the insured's contributions must be made on a regular basis, temporary interruptions caused by circumstances beyond the insured person's control, such as illness or unemployment, will be disregarded unless during this interruption someone else takes over responsibility for supporting you on a permanent basis."* (Emphasis added).

In *Boyland v. Califano,* 633 F.2d 430, 434 (6th Cir.1980) the Court found that a standard of "continuously regular and substantial contributions" was unjust when applied to impoverished fathers, who contributed to their children's care, although not to the measure objectively deemed "continuous and substantial:"

"Obviously, continuously regular and substantial contributions is a just standard when the wage earner's income is regular and substantial. But where the income of a wage earner lacks continuity and substantiality and contributions are nevertheless given, a different criterion should be applied. Where a wage earner is poor and earns an irregular income, it is ludicrous to require regular and substantial payments to his children born out of wedlock or not. The wage earner is barely supporting himself. Instead, attention should be focused on whether the contributions that were made to the support of his children were important to whether the contributions that were made to the support of his children were important to them given their needs and the wage earner's economic circumstances and ability to support."

While *Boyland* predates the adoption of 20 C.F.R. § 404.366(a)(2), the flexibility of its standard, depending on the economic circumstances of the father, remains intact. *See Young v. Secretary of HHS,* 787 F.2d 1064, 1069–70 (6th Cir.1986) ("The

thrust of the cited case law in this circuit ... discloses a recognition that a lesser standard is applicable to contributions paid during periods where the earned income of the decedent lacked continuity and substantiality"); *Parker v. Schweiker, supra,* 673 F.2d at 163 (support requirement "must be evaluated in light of the father and the child's actual circumstances"). In *Childress v. Secretary of Health and Human Services,* 679 F.2d 623, 629 (6th Cir. 1982), the Sixth Circuit, citing *Boyland,* again rejected the notion of a "fixed standard of substantiality," reasoning that "[s]uch a standard would exclude from the statute those poor children who need the support the most, and, those poor parents who are making small payments but at a big personal sacrifice. This result would be contrary to the policy of the Act of offsetting the economic dislocation suffered by dependents on account of the death of the wage earner."

In *Boyland,* the statutory requirement was satisfied where the wage earner—a retired stone mason with a limited income—made payments of five to ten dollars to his illegitimate children from time to time, and gave them gifts, clothing, and lunch money. In *Childress,* monthly payments as low as fifteen dollars were deemed sufficient. *See also Parsons for Bryant v. HHS,* 762 F.2d 1188 (4th Cir. 1985) (payments totaling fifty dollars to provide transportation to medical appointments deemed sufficient where father died during the fifth month of pregnancy); *Doran v. Schweiker,* 681 F.2d 605 (9th Cir. 1982) (assisting in moving the mother an repairing roof of her new apartment deemed sufficient). In *Chester v. Secretary of HHS,* 808 F.2d 473, 477 (6th Cir. 1987), the Court articulated as follows the standard to be applied where, as here, the father dies before the birth of the child: [10]

---

**10.** In *Chester,* the Court found insufficient evidence of support where the father, who died

over two months after the birth of the child,

"We hold that the absent father must provide at least some nominal contributions to the support of the expectant mother in order for the posthumous illegitimate child to be eligible for survivors benefits under 42 U.S.C. § 416(h)(3)(C)(ii)."

During Ms. Kienutske's pregnancy, Mr. Mosley was unemployed, and receiving disability benefits (Tr. 90, 93). Nevertheless, the record shows that he regularly contributed to household expenses for Ms. Kienutske, specifically by buying the groceries (Tr. 94, 97–98), and that he borrowed money for a down payment and rent on their apartment in anticipation the baby's birth (Tr. 94). Ms. Kienutske testified that although Mr. Mosley was unemployed, "he had bought our, our son a crib to sleep in. And he bought a stroller, car seat, for our son to—so when we take him for a walk or something, he had something to ride in" (Tr. 94). No evidence in the record contradicts this showing of Mr. Mosley's financial hardship or that he contributed to the support of Ms. Kienutske during her pregnancy.

Under the flexible standard set forth in *Boyland* and its progeny, Mr. Mosley's level of contribution, analyzed within the context of his financial difficulties, was more than sufficient to satisfy the requirements of § 416(h)(3)(C)(ii). The ALJ's finding to the contrary is not supported by substantial evidence. Since Plaintiff has satisfied both prongs of the statute, this case should be remanded for an award of benefits.

### B. Sentence Six Remand

As an alternative to a remand for an award of benefits, Plaintiff has requested a remand to consider new evidence, pursuant to sentence six of 42 U.S.C. § 405(g).

*See Plaintiff's Response Brief,* at 2–3. The basis of this request is the Shiawassee County Probate Court order of March 5, 2003 declaring Jacob Mosley an heir of Rodney Mosley, submitted to the Appeals Council after Plaintiff' administrative hearing (Tr. 82, 84). This evidence cannot be considered by this court "in deciding whether the decision denying benefits was supported by the record as a whole." *Cotton v. Sullivan,* 2 F.3d 692, 695–696 (6th Cir.1993). "Courts may not reverse an administrative law judge's decision on the evidence first submitted to the Appeals Council is consistent with the precedents in this circuit." *Id.* at 696. Rather, our consideration of the late-submitted material must be limited to its relevance to the ALJ's determination and whether Plaintiff can demonstrate good cause for its late submission.

■■■ Once a district court acquires subject matter jurisdiction to review a final decision of the Commissioner, the court has the power under 42 U.S.C. § 405(g) to affirm, modify, reverse or remand the action. Sentence six of this statute authorizes the court to remand the case for additional administrative action to consider new evidence. Before such a remand can be ordered, however, the new evidence must be material and good cause must be shown for the failure to submit the new evidence during the administrative proceedings. The party seeking the remand has the burden of proving both the materiality of the new evidence and valid reason for the failure to obtain the evidence prior to the administrative hearing. *Willis v. Secretary,* 727 F.2d 551, 554 (6th Cir.1984); *see also Cotton, supra* at 696 (6th Cir. 1993). In order for the claimant to satisfy this burden of proof as to materiality, she

---

made only a single $30 gift to the mother during her pregnancy, and provided no support after the birth. As discussed *infra,* Mr.

Mosley's level of support was not only regular, at least with regard to groceries, but significantly more substantial.

must demonstrate that there was a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence. *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir.1980).

In a sentence six remand the district court retains jurisdiction during the Commissioner's reconsideration of the case:

> "[S]entence-six remands become final judgments only after the Commissioner reports back to the Court its post-remand findings and the Court subsequently enters a final judgment. The district court, which retains jurisdiction during the entirety of the Sentence Six remand, then reviews the additional information submitted by the Commissioner 'only to the extent provided for review of the original findings of fact and decision.' 42 U.S.C. § 405(g)." *Ashford v. Commissioner of Social Security,* 2002 WL 482540, *3 (E.D.Mich., 2002)

*See also, Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

I find that the Probate Court order determining Jacob to be an heir of Rodney Mosley is material. It significantly contributes to the already uncontradicted evidence pointing to paternity under the first prong of § 416(h)(3)(C)(ii), making it more likely that the ALJ would have reached a different conclusion if he had been presented with the order. The Seventh Circuit, in an unpublished opinion, found that although a court declaration of heirship cannot be used dispositively if the court

proceedings were not "truly adversarial," "[a] state court order ... is certainly *probative* evidence that the claimant would be eligible to inherit from the insured under state law" *Tomasello v. Apfel,* 165 F.3d 33, 1998 WL 597643, *2 (7th Cir.1998) (emphasis added). In the present case, even if the ALJ were not necessarily bound by the Probate Court order under the terms of § 416(h)(2)(A), he is not free to ignore it in determining whether there is "satisfactory evidence" of paternity under § 416(h)(3)(C)(ii). *See Gray v. Richardson,* 474 F.2d 1370, 1373 (6th cir.1973).[11]

Furthermore, Plaintiff has shown good cause for not offering the Probate Court order at the time of the hearing. First, and most obviously, it did not exist. In addition, Ms. Kienutske, represented by legal aid attorneys and citing financial hardship, stated that lack of money prevented her from commencing a "Determination of Heirs" proceeding at an earlier date. *Plaintiff's Response Brief* at 2. *See Stubbs v. Apfel,* 1998 WL 547107, at *11 (N.D.Ill.1998) (regarding post-hearing medical tests, "the evidence did not exist until after the ALJ issued his opinion due to the Claimant's inability to afford the tests earlier. Thus, there is clearly good cause for the Claimant's failure to submit this evidence to the ALJ").

Thus, because the new evidence satisfies both prongs of the *Willis* test, I recommend that in the alternative to remanding for benefits, this case be remanded for

---

**11.** I recognize that *Gray* dealt not with § (h)(3)(C), but rather with § (h)(2)(A), holding that the Commissioner is bound by a state court determination only where four conditions are met: "(1) An issue in a claim for social security benefits previously has been determined by a State court of competent jurisdiction; (2) this issue was genuinely contested before the State court by parties with opposing interests; (3) the issue falls within the general category of domestic relations

law; and (4) the resolution by the State trial court is consistent with the law enunciated by the highest court in the State." *Id.* at 1373. In the present case, Plaintiff's counsel apparently concedes that the issue of paternity was not "genuinely contested" in Probate Court, "given the fact that the families involved in this case do not contest the fact that Jacob Mosley is the son of Rodney Mosley." *Plaintiff's Response Brief,* at 2.

further proceedings under sentence six, directing the ALJ to consider the evidence submitted after the administrative hearing.

## V. CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED, that Plaintiff's Motion for Summary Judgment be GRANTED, and that the case be remanded for an award of benefits. In the alternative, I recommend that the case be remanded for consideration of new evidence under sentence six of 42 U.S.C. § 405(g), with this Court retaining jurisdiction.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.